**In re Michael SCHNEIDER and Lucille Schneider, a/k/a Lucy Schneider, Debtors.**

**Bankruptcy No. 180–01503–21.**

United States Bankruptcy Court, E.D. New York.

Jan. 31, 1984.

Sherman & Citron, P.C., New York City, for debtors.

Walter, Conston & Schurtman, P.C., New York City, for creditors.

OPINION

CECELIA H. GOETZ, Bankruptcy Judge.

The debtors in this closed Chapter 7 case are moving to reopen this proceeding pursuant to 11 U.S.C. § 350(b) in order to have certain judgment liens on their real property cancelled.

The facts disclosed by the motion papers and the court's records are few.

On March 27, 1980 the Debtors, Michael and Lucille Schneider, filed a petition for relief under Chapter 7 of Title 11. Their schedules showed no free assets available to their creditors. According to their schedules their sole assets, apart from the home in which they lived, had a total value of less than $5,000, all of which they claimed as exempt. Their debts exceeded $500,000. He described his occupation to be a student; she described herself as employed in retail management. Their cash, they said, was zero.

Their schedules showed a home located at 325 Elm Street, West Hempstead, New York, on which they placed a value of $95,-000. It was encumbered by three mortgages. One held by Astoria Federal Savings & Loan Association on which there was due $58,500; a second held by Peninsula National Bank in the amount of $50,000, which, on information and belief, had been assigned to the United States Small Business Administration; and a third held by the Small Business Administration in the amount of $40,000. These three mortgages totalled $148,500, leaving no equity in the debtors, assuming the accuracy of the claimed value of $95,000. Nevertheless, the debtors claimed, under the federal exemptions which they elected, a homestead exemption in the amount of $15,000.

The schedules listed, as unsecured creditors, Bogner of America, Inc. ("Bogner"), Wilson Sporting Goods and Athelon Products. In their motion papers the debtors claim to have been unaware that all three of these creditors had secured judgments against them which had been filed as liens against their real estate prior to the time the Chapter 7 petition was filed.

Because the case appeared to be a no-asset case, the notice sent all creditors advised them it was unnecessary to file claims and no claims were in fact filed.

Ira Green was appointed as Trustee; on August 12, 1981 he reported that no assets were available to creditors for distribution. The debtors received their discharge some-time earlier on October 2, 1980 and the estate was closed approximately a year later, on October 30, 1981. Upon such closing, title to the real estate was deemed abandoned. 11 U.S.C. § 554(c).

The present motion was made approximately three years after the debtors were discharged and two years after their case was closed, leaving them in possession of their real estate.

The debtors want to have the estate reopened "for the purpose of having a valuation hearing pursuant to Section 506(a) of the Bankruptcy Code, to determine the value of the judgments as liens and reclassify them as unsecured claims discharged by the grant of the discharge to the Debtors on October 2, 1980." Application of Debtors, dated September 26, 1983, at 3–4. The debtors want the real estate appraised as of the date they filed their petition. An appraisal attached to their motion papers, dated April 1981, puts a value of $95,000 on the property, exactly as claimed by the debtors in their schedules.

Bogner opposes the application. Bogner's papers allege, upon information and belief, that the second and third mortgages held by the SBA have been discharged and the house has increased in value so that Bogner's lien is now fully secured. Bogner notes that "it is not clear how the Debtors managed to satisfy a $90,000 mortgage indebtedness just two years after their bankruptcy." Memorandum of Law in Opposition to Debtors' Motion to Reopen the Estate, at p. 3. Bogner argues:

"By reopening the case and holding a valuation hearing on a set of facts that no longer exist, the Debtors will deprive Bogner of a valuable property right." "Bogner's judicial lien survived the Debtors' bankruptcy. No action was taken against the lien before the estate was closed. The Debtors could have and should have attempted to avoid Bogner's lien two years ago." *Id.* at p. 3.

## DISCUSSION OF LAW

As both sides acknowledge there is almost nothing in the way of precedent to guide

the court in disposing of this motion which implicates a new provision of the Code, Section 506(d).

The present motion is under 11 U.S.C. 350(b) which provides simply: "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause."

As was noted earlier, the reopening is sought for the purpose of wiping out judgment liens created before the debtors filed for relief under Chapter 7.

■ It was a long-standing principle of pre-Code case law that pre-petition liens, which were neither disallowed nor avoided, pass through a bankruptcy case unaffected. See, e.g., *Long v. Bullard,* 117 U.S. 617, 6 S.Ct. 917, 29 L.Ed. 1004 (1886).

This principle is preserved by Section 506(d). To understand Section 506(d) it is necessary first to review Section 506(a). Subsection (a) of Section 506 divides an allowed claim secured by a lien into two parts: (a) a secured claim equal to the value of the "creditor's interest in the estate's interest in the property", and (b) an unsecured claim to the extent of any excess over such value. Only the former is an "allowed secured claim". Subsection (d) of Section 506 provides:

"To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless

(1) a party in interest has not requested that the court determine and allow or disallow such claims under Section 502 of this title; or

(2) such claim was disallowed only under section 502(e) of this title."

The authoritative text, Collier on Bankruptcy, notes:

"Section 506(d) has no precedent under the 1898 Act. Instead it appears to be a combination of pre-Code case law to the effect that liens may pass through a

bankruptcy case unaffected and Bankruptcy Rule 306(d) which provided for the determination by the court of the value of security interests held by secured claimants who file proofs of claim and the allowance of such claims only to the extent enforceable for any excess of the claim over such value." 3 *Collier on Bankruptcy,* ¶ 506.7 at 506–49 (15th Ed. 1983).

■ Bankruptcy Rule 306(d), however, was in some way the converse of the superseding Code provision, Section 506(a). The Code section places the emphasis on determining to what extent a claim is secured; Bankruptcy Rule 306(d) was concerned with ascertaining to what extent a secured claim was unsecured and, therefore, eligible to share in the general estate.[1] But both the Rule and the Code provide a mechanism for dividing the claim secured by a lien into a secured and unsecured portion. Section 506(d) goes further than Bankruptcy Rule 306(d) by insuring, through the equivalent of a double negative, that, unless someone requests a division between the secured and unsecured portion of the lien, the lien passes through the estate unaffected. To rephrase Section 506(d) somewhat more affirmatively: If a party in interest has not requested determination of the claim under Section 502, then the lien securing the claim is not void and survives the bankruptcy.

This is made clear by the following excerpt from the authoritative House Report:

"Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed." House Report 95–595, 95th Cong. 1st Sess. (1977) 357; cf. Senate Report No. 95–989, 95th Cong.,

---

1. B.R. 306(d) which was part of the rule dealing with objections to and allowances of claims for purposes of distribution read:

"If a secured creditor files a proof of claim, the value of the security interest held by him

as collateral for his claim shall be determined by the court, and the claim shall be allowed only to the extent it is enforceable for any excess of the claim over such value."

2d Sess. (1978) 68, U.S.Code Cong. & Admin.News 1978, p. 5787.

Subsection 506(d) was explained and applied by Bankruptcy Judge Emil F. Goldharber in *In re Spadel,* 28 B.R. 537, 10 B.C.D. 506, 508 (Bkrtcy.Pa.1983). In that case debtors, who had filed under Chapter 13, requested the court, post-confirmation of their plan, to avoid a third mortgage on their property on the ground that there was no equity in the real estate over and above the first two mortgages. The court, while agreeing that the claim of the third mortgagee was unsecured under Section 506(a), held that the mortgage could not be avoided for the following reasons:

"HCDC [the third mortgagee] contends, **inter alia,** that its mortgage lien is not avoidable because no party in interest, including the debtors, requested us to determine and allow or disallow its claim under Section 502(a) of the Code which provides that '[a] claim or interest, proof of which is filed under Section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a partner in a partnership that is a debtor in a case under Chapter 7 of this title, objects.' 11 U.S.C. § 502(a). We agree.

Collier's states that

Where a party in interest has not requested that the court make the determination concerning the allowability of the claim pursuant to the allowability provisions of Section 502, the lien is not void notwithstanding that it secures a claim against the debtor that would not be an allowed secured claim under Section 506(a) [emphasis in original].

3 *Collier On Bankruptcy,* Para. 506.07 at 506–19 (15th ed.).

Moreover, the legislative history behind Section 506(d) establishes that a lien which secures a claim against a debtor that would not constitute an 'allowed secured claim' under Section 506(a) will nevertheless survive bankruptcy if there has been no determination of the 'allowability' of said claim pursuant to Section 502:

Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by the lien under Section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed.

See H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 357 (1977). See also Nefferdorf v. Federal National National Mortgage Association No. 82–3163K (Bankr. ED PA 2/2/83); 3 Collier on Bankruptcy Para 506.07 at 506–21 (15th ed.). While HCDC's lien would not constitute an 'allowed secured claim' under Section 506(a) of the Code because there is no equity in the debtors' residence over and above the first two mortgages, Section 506(d)(1) of the Code, nevertheless, expressly prohibits the avoidance of said lien because a party in interest, including the debtors, did not request the bankruptcy court to determine and allow or disallow HCDC's claim pursuant to Section 502 of the Code. Therefore, in accordance with Section 506(d)(1), we conclude that HCDC's mortgage lien is not void and that it remains unaffected by the debtor's bankruptcy."

■ The debtors indirectly concede that they did not during the pendency of the case request the Bankruptcy Court to allow or disallow the judgment liens which they now seek to avoid. But, they now propose to repair that omission retroactively. To permit them now to do so is inconsistent with the language of the Code, the legislative history of the relevant provisions, and overall design of the Statute.

The language of the Code appears to foreclose any reexamination of a lien under Section 506(d) after a case is closed. For a lien to be avoided a party at interest must request that "the court determine and allow or disallow such claim under Section 502." However, subsection (j) of Section 502 appears to place a time limit on the making of such a request. It provides that, "*Before a case is closed,* a claim that has been allowed

may be reconsidered for cause and allowed or disallowed according to the equities of the case." [Emphasis supplied]. It is true that § 502(j) speaks of the reconsideration of claims that have already been allowed, rather than claims like those of the creditors here involved, which were never made and, therefore, never allowed. Nevertheless, the legislative intent that the allowance and disallowance of claims come to an end with the closing of the proceeding seems clear.

Limiting recourse to § 502 to the life of the bankruptcy proceeding is consistent with the expressed legislative intent that unchallenged liens pass through the bankruptcy unaffected. Such intent would not be consistent with permitting their invalidation years after the case is closed; they could scarcely be described as "unaffected" if they were subject to avoidance at any time at the option of the debtors.

Furthermore, the overall design of the statute is inconsistent with what the debtors propose. A bankruptcy proceeding is an integrated whole which lays down certain time periods within which its objectives are to be achieved and the proceeding concluded. A consumer bankruptcy has two objectives: to distribute among creditors whatever assets are available and to discharge the debtor from his dischargeable debts. Reflecting the finite character of bankruptcy proceedings are the strict time periods relative to discharge. At the time these debtors filed, a creditor wishing to object to a discharge would have had to do so within ninety days after the first date set for the first meeting of creditors. Bankruptcy Rule 404(a). If no objection was filed within that period, the court was obliged to "forthwith grant a discharge." Bankruptcy Rule 404(d).

█ Under the Code a discharge once it is issued cannot be revoked, even if obtained fraudulently, after a case is closed or after the lapse of one year, whichever is later. 11 U.S.C. § 727(e). Thus while a discharge can be denied if the debtor conceals assets or otherwise deals dishonestly with his creditor, it passes beyond recall, whatever the facts, with the termination of the proceeding or the lapse of time.

Three years ago the debtors in this case discharged debts totalling over half a million dollars. The objecting creditor is curious as to how debtors who reported the possession of no assets other than clothing and household gear were able to obtain the discharge of mortgages totalling $90,000. But whatever further inquiry might develop, the discharge of the debtors is now irrevocable and cannot be challenged.

█ The debtors are not proposing that their Chapter 7 proceedings be reopened for all purposes, including reexamination of their right to a discharge. Nor is it clear that even if they were willing, the statute would permit such a reexamination. But a bankruptcy case cannot properly be segmented, with the debtors' remedies available in perpetuity while those of the creditors are unavailable. To permit the debtors while sheltered by an irrevocable discharge to reopen the closed bankruptcy proceeding to obtain the benefit of procedures of which they did not earlier take advantage, and thereby wipe out their creditors' liens does not commend itself.

Although the debtors concede they have found no precedents permitting what they are now requesting, they urge it should be allowed by analogy to the cases involving 11 U.S.C. 522(f). That section permits debtors to avoid certain types of liens that impair their exemptions. The courts have split on whether Section 522(f) can be invoked after the proceeding has been closed.

While some courts have answered the question affirmatively (E.g., *In re Gortmaker*, 14 B.R. 66 (Bkrtcy.S.D.1981), *Rheinbolt v. Credit Thrift of America, Inc.*, 24 B.R. 167 (Bkrtcy.Ohio 1982); *In re Hall*, 22 B.R. 701 (Bkrtcy.E.D.Pa.1982)), a District Court in Virginia has reversed a bankruptcy court in a well-reasoned opinion and has held that there can be no lien avoidance under 522(f) after a case is closed. *Beneficial Finance Co. of Virginia v. Franklin*, 26 B.R. 636 (D.C.W.D.Va.1983). The same conclusion

**120**

was reached in *In re Andrews,* 22 B.R. 623 (Bkrtcy.Del.1983).

This court is inclined to agree with the view that avoidance of liens under 522(f) comes too late after a case has been closed, but it is unnecessary to reach that question since the debtors here are not seeking to avoid their creditors' liens under Section 522(f) but under § 506(d).

To sum up: the Court is denying the debtors' motion as untimely. After a case is closed it is too late to ask the court to determine and allow or disallow a secured claim under Section 502. Because such a request was not made while the debtors' case was open, the creditors' liens passed through the debtors' bankruptcy proceedings unimpaired.

An order consistent with this Opinion is being issued simultaneously.