**In re Richard J. BANDINI, Debtor.**

**Bankruptcy No. 93–24608–BKC–RBR.**

United States Bankruptcy Court,
S.D. Florida,
Fort Lauderdale Division.

March 29, 1994.

Frank P. Terzo, Coral Gables, FL, for debtor.

Barbara L. Phillips, Miami, FL, for Dawn K. Bandini.

Robin F. Wiener, Trustee, Hallandale, FL.

### ORDER DISMISSING CASE

RAYMOND B. RAY, Bankruptcy Judge.

THIS MATTER came before the Court on March 8, 1994, upon the Motion to Abstain from Exercising Jurisdiction or to Dismiss Case filed pursuant to 11 U.S.C. §§ 305 and 1307(c) by Dawn K. Bandini, the former spouse of the Debtor. Upon consideration of the evidence adduced at trial, review of the briefs and other documentation submitted by the parties, the court file, and applicable authorities, I find that dismissal of this case is appropriate.

The Debtor filed a petition under chapter 13 of the Bankruptcy Code with this Court on December 7, 1993. The Movant seeks to dismiss this case as a bad faith filing or in the alternative asks this Court to abstain from exercising its jurisdiction.

The parties have been married and divorced twice. They divorced for the first time on September 13, 1989, following 23 years of marriage. As part of the first dissolution proceedings, the parties entered into a 28 page Marital Settlement Agreement on September 12, 1989 [the "1989 Agreement"]. The 1989 Agreement, which was fully incorporated into their first marriage dissolution, obligates the Debtor to make monthly alimony payments of $2,800.00 to Dawn K. Bandini and, by its terms, clearly provides that that sum is non-modifiable.

The 1989 Agreement stems from the fact that during the course of the 23 year first marriage, the parties had worked together to build and run a successful manufacturers's representative business, R.J. Bandini, Inc. It is apparent that R.J. Bandini, Inc. was a significant asset of this marriage to be equitably divided in the divorce proceeding. The 1989 Agreement specifically provided that the movant, Dawn K. Bandini, waived and relinquished all rights to the corporation, R.J. Bandini, Inc. in consideration for payment of the permanent, non-modifiable alimony in the sum of $2800.00 per month commencing on September 1, 1991.

On September 26, 1990, the Debtor and the Movant reconciled for a short period of time and remarried. Just prior to the remarriage, the parties entered into a prenuptial agreement which agreement expressly incorporated the 1989 Agreement.

The parties had another falling out and divorced for a second time. The December 18, 1990 Final Judgment of Dissolution of [Second] Marriage which dissolved the parties' remarriage specifically incorporated the September 25, 1990 prenuptial agreement and the 1989 Agreement.

From September 1989 through September 1992, the Debtor had adhered to the terms and conditions of the 1989 Agreement and its progeny. In September, 1992, however, the Debtor decided to marry another and began a pattern of paying only partial alimony or skipping monthly alimony payments altogether. In addition, the Debtor allowed the medical insurance coverage for his former wife and dependant child to lapse, also in violation of the 1989 Agreement and the subsequent incorporating agreements and Court Orders.

The Movant then sought enforcement of the alimony arrearage. Upon hearing before the Honorable Lavan Ward, Circuit Court Judge, Broward County, Florida, it was determined that the debtor owed his ex-wife the sum of $31,000.00 in past due alimony, together with interest in the sum of $2,209.07, for a total of $33,209.07 through November 9, 1993. Judge Ward further observed that:

> Husband lives with his new wife in a three (3) bedroom oceanfront condominium on the Galt Ocean Mile. He purchased the unit in 1991 for $240,000.00. It is currently listed for sale for $275,000.00. Husband purchased new furniture for all of the rooms, oriental rugs, a 55 inch television set, Mikasa china, Lenox Crystal, and new flatware. In 1992, he got two (2) Corvettes, a 1989 Corvette for his adult son, Michael, and a 1991 Corvette for his new wife. In December of 1992, a month in which he paid his wife no alimony whatsoever, husband paid $11,760.00 for an engagement ring for his present wife. In the last few years, husband also purchased a broach for his present wife for $7,000.00, a tennis bracelet for her for $3,500.00 and "his and her" wedding rings with diamonds for several thousand dollars. In February of 1993, husband bought his present wife a wedding dress that costs between $2,200.00 and $2,300.00. Husband's wedding party in March of 1993, which was totally deducted as a business expense, including the caterer, the florist, and the photographer, costs approximately $5,000.00."

[Final Judgment (of second divorce) dated November 17, 1993, par. 28, p. 7]

On December 7, 1993, the Debtor commenced these chapter 13 proceedings. The Debtor's schedules reflect no arrearages on any secured claims, indicate priority claims

consisting of only current 1040 tax liability for 1993 in the sum of $15,000.00, and reveal scheduled unsecured debt totalling $52,783.24. Of this sum, the Movant holds the single largest claim of $33,210.00. The remaining scheduled unsecured creditors are primarily credit cards with balances of $6,000.00 or less.

Subsequent to his Chapter 13 filing, the Debtor commenced an appeal in the Fourth District Court of Appeals to review the Final Judgment entered on November 17, 1993 by Circuit Judge Ward.

The Debtor's Chapter 13 plan provides for repayment of the past due alimony due the Movant without interest over a 60 month period. The Debtor further seeks to unilaterally modify the future alimony payments, notwithstanding the non-modifiable terms of the 1989 Agreement and the subsequent documents incorporating same. Specifically, the Debtor's monthly budget reflects that current alimony is to be only $200.00 as opposed to the agreed sum of $2,800.00, which amount was ordered by the Broward Circuit Court twice and which is incorporated into at least two agreements between these parties.

11 U.S.C. § 1307 provides that a chapter 13 case may be dismissed for "cause". It is firmly established that a lack of good faith may constitute cause for dismissal of a chapter 13 bankruptcy. *See In re Martinez*, 76 B.R. 217 (Bankr.S.D.Fla.1987). Generally speaking, "good faith" for purposes of chapter 13 requires more than technical compliance with the provisions of the statute; "good faith" requires "honesty of purpose" on the part of the debtor and contemplates broad judicial inquiry into the debtor's conduct and state of mind in proposing a plan. The courts should determine whether, under the facts and circumstances of the case, there is an abuse of the provisions, purpose, or spirit of Chapter 13. *In re Hawes*, 73 B.R. 584 (E.D.Wis.1987).

The Eleventh Circuit has set forth eleven factors to be considered on the issue of good faith in Chapter 13. Those factors include:

1) The amount of the debtor's income from all sources;

2) The living expenses of the debtor and his dependents;

3) The amount of attorney's fees;

4) The probable or expected duration of the debtor's Chapter 13 plan;

5) The motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13;

6) The debtor's degree of effort;

7) The debtor's ability to earn and the likelihood of fluctuation in his earnings;

8) Special circumstances such as inordinate medical expenses;

9) The frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessor;

10) The circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealing with his creditors;

11) The burden which the plan's administration would place on the Trustee.

*Kitchens v. Georgia Railroad Bank & Trust Co. (In re Kitchens)*, 702 F.2d 885 (11th Cir.1983).

With regard to the first *Kitchens* factor, the amount of the debtor's income from all sources, I am persuaded that this Debtor has the ability and inclination to manipulate his apparent income through his wholly owned corporation for whatever purpose he wishes. As observed by Judge Ward:

The Husband's Financial Statements and Affidavits differ based upon the purpose for which they were prepared, and whether or not he wants to appear rich or poor for said purpose. According to the Uniform Residential Loan Application for the refinancing of his condominium in the Spring of 1993, approximately the same month and year he filed his Financial Affidavit in this cause, Husband's annual income was $107,880.00, his net worth was $169,060.00, and he had $109,975.00 in liquid assets.... The self-employed Husband has shown an ability to manipulate his profits and income by deducting personal expenses such as weddings, personal legal expenses, and rents, travel and car expenses for family members as business

expenses, and by depositing commission checks made out to R.J. Bandini into the corporate checking account as loans instead of income, and then taking the money out as non-taxable returns of loan....

[Final Judgment (of second divorce), pars. 30–31, dated November 17, 1993].

It is clear that the Circuit Court was unable to make a determination as to the Debtor's income from all sources. The Chapter 13 Trustee also stated her concern that the Debtor's Schedules were inaccurate with regard to his true income and supported dismissal with prejudice for lack of good faith. Viewing the totality of the circumstances surrounding this case, it appears to this Court that the Debtor's income from all sources is certainly sufficient to support a lavish lifestyle for himself, certain of his family members, and his new spouse. His apparent willingness to shower his new spouse with gifts while ignoring or skirting his obligations to his former spouse weighs heavily against the Debtor in the good faith analysis.

With regard to the second *Kitchens* factor, the living expenses of the debtor and his dependents, the lavishness of the Debtor's lifestyle has been addressed earlier in this opinion and in the Circuit Court Orders quoted herein. Clearly the Debtor has the ability to reduce his lifestyle in order to pay the non-modifiable sum he agreed upon as alimony in the 1989 Agreement.

■ As to the fifth *Kitchens* factor, it is apparent that the primary, if not the sole motivation of this Debtor in seeking relief under the provisions of chapter 13 is the modification of the 1989 Agreement following his loss on that same issue before Circuit Judge Ward. The Circuit Court judgment was appealed by the Debtor subsequent to the chapter 13 filing and it appears that the Debtor intends to pursue this issue on two fronts. In the event he prevails in the appeal of the Circuit Court judgment, then it is quite likely this case will be voluntarily dismissed inasmuch as there are few other debts to reorganize. If the Debtor fails in his appellate attempt, then he seeks to circumvent the final judgment of the state courts through his proposed chapter 13 plan. Bankruptcy Courts were never intended to be appeals courts from state court domestic relations issues. *See In re Crisco,* 9 B.R. 528 (Bankr.S.D.Fla.1980); *See also Matter of Scarborough,* 50 B.R. 1 (Bankr.S.D.Miss. 1985) (Debtor's chapter 13 plan failed to meet good faith requirement where primary purpose for filing was to nullify state court judgment for child support arrearage); *In re Moog,* 159 B.R. 357 (Bankr.S.D.Fla.1993) (Chapter 11 filed by debtor as litigation tactic to circumvent ex-spouse's efforts to enforce New York divorce decree was dismissed as bad faith filing).

In *Moog,* a solvent debtor had filed chapter 11 to avoid execution of a New York divorce judgment and proposed to pay the debt within his chapter 11 plan. The debtor had failed to pay a lump sum obligation as well as monthly interest payments required by the divorce decree. During the same time period, he was "continuing his lavish lifestyle and bestowing gifts, including cars and money on other women." 159 B.R. at 359. As is the case here, Mr. Moog was not being pressed for payment by other creditors at the time he filed his chapter 11 petition but rather "filed his petition solely to prevent or delay the consequences of his failure to pay the divorce judgment and more specifically to frustrate Mrs. Moog's legitimate efforts to collect that judgment. *Mr. Moog filed with the intent of not only delaying payment to his wife, but also changing the essential concept of the divorce settlement he had agreed to nine months earlier.*" 159 B.R. at 360 (emphasis provided). Finding that Mr. Moog had filed his chapter 11 petition in order to "get out of a bad deal", the *Moog* Court dismissed his case as a bad faith filing. The Court determined that the matter, like the present case, was essentially a two party dispute more appropriately resolved in the state court forum where it began. 159 B.R. at 362. While I recognize that Mr. Moog was a multi-millionaire capable of paying his debts as they became due with perhaps greater ease than the Debtor herein, I nonetheless find the *Moog* case controlling.

As to the sixth *Kitchens* factor, the Debtor's degree of effort, I point to the Circuit Court findings regarding the Debtor's luxuri-

ous home and furnishings, expensive cars for himself, his college age children, and his present spouse, as well as the expensive jewelry and gifts he bestowed upon his present spouse during the period he allowed the alimony arrearage to build as indicative of a complete lack of effort regarding his obligations. Moreover, the Debtor, through his proposed plan, seeks to unilaterally reduce the non-modifiable alimony payments to a fraction of the original amount without any indication of a corresponding decrease in his own lifestyle. Given all of the surrounding circumstances, I cannot find that the Debtor has shown the requisite degree of effort expected of a good faith chapter 13 debtor.

With regard to the seventh *Kitchens* factor, the debtor's ability to earn and the likelihood of fluctuation in his earnings, it appears that the Debtor is in full control of this factor and, in light of his highly questionable tax writeoffs, will manipulate the same to show whatever he wishes. I note that the assets disclosed to the Circuit Court as incorporated in the Final Judgment [of second divorce] vary significantly from the assets listed in the Debtor's Schedules. Additionally, the Circuit Court discovered that the assets the Debtor listed in connection with the second divorce proceeding varied significantly with the affidavit and financial statements he had prepared in connection with the refinancing of his condominium months earlier. In short, I do not find the Debtor's representations regarding the purported reduction in his income to be credible in view of his past misrepresentations on the same subject. In fact, Circuit Judge Ward made a specific finding in his November 17, 1993 Final Judgment [of second divorce] that the Debtor had failed to show a change of circumstances.

The Debtor has cited the recent Supreme Court case of *Ankenbrandt v. Richards*, —— U.S. ——, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), for the proposition that review of the Debtor's divorce related obligations is appropriate in this forum. I have reviewed the *Ankenbrandt* case and find it wholly inapplicable to the facts of this case. *Ankenbrandt* addressed the narrow issue of "whether federal courts have jurisdiction or should abstain in a case involving alleged torts committed by the former husband of a petitioner and his female companion against the peti-

tioner's children, *when the sole basis for federal jurisdiction is the diversity-of-citizenship provision.*" —— U.S. at ——, 112 S.Ct. at 2208 (emphasis provided). Here the basis of jurisdiction is not diversity and, inasmuch as I find dismissal appropriate on grounds of the Debtor's bad faith, it is unnecessary to address the abstention issue and *Ankenbrandt* is not applicable.

For the foregoing reasons, and with the Court being otherwise duly advised in the premises, it is

ORDERED AND ADJUDGED that the Debtor's Chapter 13 case is DISMISSED with prejudice against refiling under any chapter of the Bankruptcy Code for a period of six (6) months of the date of the filing of this petition. Any subsequent filing thereafter shall be accompanied with a copy of this Order as required by Rule 102(A)(3) of the Local Rules for the United States Bankruptcy Court for the Southern District of Florida, effective April 1, 1994.

DONE AND ORDERED.