In re John Clarence **BRENNER**, Debtor.

**Bankruptcy No. 92–32740.**

United States Bankruptcy Court,
N.D. Ohio, Western Division.

Oct. 3, 1995.

Anthony B. DiSalle, Trustee, Toledo, OH.

United States, Trustee, Cleveland, OH.

Ralph J. Lewis, Toledo, OH, for IRS.

Randy L. Reeves, Lima, OH, for Debtor.

### MEMORANDUM OPINION AND DECISION

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon Debtor's Objection to the Amended Claim filed by the Internal Revenue Service. The United States filed a Response, and the matter was set for Hearing. At the Hearing, the Court instructed the parties to file post-Hearing Briefs. The Court also instructed the United States to report to the Debtor, Trustee, and the Court as to the application of tax refunds withheld from the Debtor by the Internal Revenue Service, and the balance due on the back taxes. The United States has failed to file either a Brief or respond to the Court as directed. For reasons detailed below, this Court finds that the

Amended Claim of the Internal Revenue Service should not be allowed, and that a Hearing should be set as to why the United States should not be held in contempt for failing to respond to the Court as instructed.

### FACTS

Debtor filed his bankruptcy petition under Chapter 13 of the Bankruptcy Code on July 27, 1992. On September 17, 1992, the Internal Revenue Service filed a proof of claim setting forth a secured claim of Thirteen Thousand Five Hundred Twenty-five and 08/100 Dollars ($13,525.08). The proof of claim also contained a form statement that, "For purposes of section 506(b) of the Bankruptcy Code, post-petition interest may be payable." On November 4, 1992, this Court entered an Order confirming the Debtor's Chapter 13 Plan. The Plan did not treat the Internal Revenue Service claim as a secured claim, but rather as an unsecured priority claim. The Internal Revenue Service did not object to the Plan either before or after confirmation, nor was there a timely appeal. The Debtor has been making payments on the plan to date, and though he fell behind briefly while he changed employment, is currently up to date on all plan payments.

A Motion of the Trustee to allow claims was filed on January 20, 1993, to which the Debtor objected. The objection was subsequently resolved by the parties. The Debtor claims that the resolution was made in reliance of the allowance of all other claims as scheduled, including the treatment of the claim of the Internal Revenue Service as an unsecured priority claim which does not bear interest.

On April 14, 1995, the Internal Revenue Service filed an Amended Proof of Claim and, as with the original filing, the claim stated that the Thirteen Thousand Five Hundred Twenty-five and 08/100 Dollars ($13,525.08) amount is secured. The only difference between the original proof of claim and the amendment was that the latter included a stamped statement indicating that interest was payable at ten percent (10%) on the secured claim.

The Debtor has objected to the amendment. The Debtor notes that it is standard practice for interest-bearing claims to be noted before distribution to creditors so that interest bearing claims can be paid first. Further, the Debtor notes that the filing of the Amended Proof of Claims comes thirty-three (33) months after the filing of the Chapter 13 petition, and that the rate of interest claimed by the Internal Revenue Service is not the appropriate rate of interest for the majority of the time the tax was payable under the plan (the Debtor claims it should be 7% before January 1995). Finally, the Debtor argues that the Internal Revenue Service has improperly withheld the Debtor's tax refund checks for 1993 and 1994, without even reporting allocation of these funds to the tax debt owed.

### LAW

The Bankruptcy Code provides in pertinent part:

**11 U.S.C. § 506(b). Determination of secured status**

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

**11 U.S.C. § 1307. Conversion or dismissal**

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]

**11 U.S.C. § 1322. Contents of Plan**

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims,

or leave unaffected the rights of holders of any class of claims;

\*　　\*　　\*　　\*　　\*　　\*

(5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

**11 U.S.C. § 1325. Confirmation of a plan**

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

 (A) the holder of such claim has accepted the plan;

 (B)(I) the plan provides that the holder of such claim retain the lien securing such claim; and

 (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

 (C) the debtor surrendered the property securing such claim to such holder[.]

**11 U.S.C. § 1327. Effect of Confirmation**

(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.

**11 U.S.C. § 1329. Modification of plan after confirmation**

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to—

 (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;

 (2) extend or reduce the time for such payments; or

(3) alter the amount of the distribution to a creditor whole claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan.

### DISCUSSION

 Determinations concerning the allowance or disallowance of claims are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(B). Thus, this case is a core proceeding.

The issue presented to this Court has been framed by the parties as a question of whether the amended proof of claim of the Internal Revenue Service (hereafter "IRS") should be allowed as an amendment to its previously filed claim, or whether the amendment is really in the nature of a late filed proof of claim, and should be disallowed. This Court believes, however, that this issue is overridden by competing issues concerning a secured creditor's right to interest on its claim provided for under § 506(b) and § 1325(a)(5)(B)(ii), and the binding effect on the parties of the confirmation of a Chapter 13 plan under § 1327(a) and the doctrine of *res judicata.*

 Regarding the propriety of the amendment to the proof of claim, this Court will note that because the original proof of claim form filed by the IRS stated that interest may be payable under § 506(b), the later amendment which more explicitly asks for interest was arguably not necessary. Rather, the amendment was used by the IRS as a vehicle to assert its claim for interest on its secured claim. This Court will not question the validity of this method of bringing the issue before the Court, but rather will address the substance of the IRS's claim. Thus, the issue is whether the IRS should be allowed interest on its timely filed secured claim when such claim was not treated as secured in the Debtor's confirmed Chapter 13 Plan, and when the IRS did not timely object to the Plan. The resolution of this issue involves an analysis of the policies underlining the provision for post-petition interest on secured claims provided for in the Bankruptcy Code, and the well established

rule that confirmation of a Chapter 13 plan binds the parties.

The Court will begin with a discussion of the Supreme Court's recent rulings on an oversecured creditor's right to interest, *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989), and *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993). In *Ron Pair* the Supreme Court rejected the Sixth Circuit Court of Appeals holding that § 506(b) was only intended to provide for interest on consensual oversecured claims, and ruled that the IRS was entitled to interest on its oversecured tax lien. 489 U.S. at 242–246, 109 S.Ct. at 1031–1033. The case involved a Chapter 11 reorganization in which the debtor's plan, approved by the Bankruptcy Court, did not provide for post-petition interest on the government's claim. *Id.* at 237, 109 S.Ct. at 1028. The Court held that when interpreting the Bankruptcy Code, the plain language of the statute controls, notwithstanding the case law prior to the revision of the Bankruptcy Code and the lack of evidence of legislative intent to change it. *Id.* at 242, 109 S.Ct. at 1031. It should be noted that in *Ron Pair*, the government timely objected to and appealed the debtor's plan. *Id.* at 237, 109 S.Ct. at 1028.

In *Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993), the Supreme Court again addressed the issue of an oversecured creditor's right to interest. *Rake* involved a consolidation of cases in which the debtors' Chapter 13 plans proposed to pay mortgage arrearages on an oversecured creditor's claim without interest. The creditor objected to each plan. *Id.* at ——, 113 S.Ct. at 2189. In its discussion, the Court stated that *Ron Pair* stands for the proposition that an oversecured creditor is entitled to post-petition interest on its secured claim whether or not the agreement giving rise to the claim provides for it. *Id.* at ——, 113 S.Ct. at 2190. The Court also mentioned that it is generally recognized that § 506(b) interest will accrue until payment of the secured claim or until the effective date of the plan. *Id.* The Court further noted that § 1322(b)(2) and § 1322(b)(5) provide that the plan may make modifications of the se-

cured claim *unless* the claim is secured by the Debtor's residence. *Id.* It is interesting to note that the Court's language mentions that this provision protects "home mortgage lenders" even though the plain language of the rule would provide protection for any secured claim in which the collateral is the debtor's principal residence. *Id.* at ——, 113 S.Ct. at 2190.

The *Rake* Court made two holdings in reaching its conclusion that an oversecured creditor is entitled to interest on the arrearages of its oversecured claim which are cured under the plan. First, the Court held that the oversecured creditor is entitled to interest on its secured claim *before* the confirmation of the plan under § 506(b), and that interest on the arrearages provided for under the plan is part of that secured claim. *Id.* at ——, 113 S.Ct. at 2191. The Court reasoned that even though § 1322(b)(5) provides that the plan may provide for the curing of any default, nothing in § 1322(b)(5) indicates that such a cure may not include interest. *Id.* at ——, 113 S.Ct. at 2192.

■ The Court's second holding was that an oversecured creditor was entitled interest on the arrearages of its claim *after* the confirmation of the Chapter 13 plan. *Id.* at ——, 113 S.Ct. at 2193. The Court explained that when a claim is "provided for" by the plan, § 1325(a)(5) becomes operative. *Id.* Section 1325 provides that the Bankruptcy Court shall confirm a plan if it complies with the provisions of that section. Subsection § 1325(a)(5) deals with the conditions within which secured claims must be treated. That subsection provides that secured claims must be treated in one of three ways: either (1) the debtor surrenders the collateral to the secured creditor, (2) the secured creditor accepts the plan, or (3) the secured creditor retains the lien and is provided at least the present value of its claim, which includes interest. *Id.* at —— ——, 113 S.Ct. at 2190–2191. Because the secured creditor in *Rake* had objected to the appealed plans, he fell into the third category, which provides for the post-confirmation interest ("present value").

■ What is of particular interest to the Court in the instant case which was not

addressed by the Court in *Rake* or *Ron Pair* is whether the oversecured creditor is entitled to pre-confirmation or post-confirmation interest when the oversecured creditor has not affirmatively accepted or objected to the plan. That is, should the oversecured creditor's failure to timely object to the plan be deemed to be acceptance, thus precluding the payment of interest not provided for in the plan? Further, should the result differ for pre-confirmation interest versus post-confirmation interest? As detailed under the Court's holding in *Rake* above, § 506(b) provides for interest only until the effective date of a confirmed plan. *Id.* at ——, 113 S.Ct. at 2191. Further, as detailed above, the oversecured creditor is entitled to post-confirmation interest (the present value of its claim) under § 1325(a)(5)(B)(ii) only when it has not accepted the plan under § 1325(a)(5)(A). Thus, the issue in this case is the effect of the IRS's failure to object to the Debtor's plan which clearly does not provide for interest on its secured claim. Further still, this Court must decide whether the Debtor's error in the treatment of the secured claim as an unsecured claim within its plan (and in its schedules) should change the result.

This Court will next address the law regarding the binding nature of a confirmed plan of reorganization in bankruptcy. The Supreme Court has also had the opportunity to address this issue, in *Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938). In *Stoll,* the debtor business filed for bankruptcy reorganization, and a plan of reorganization was approved after the appropriate notice was given to creditors. 305 U.S. at 169, 59 S.Ct. at 136. The plan provided that stock in another corporation would be substituted for the debtor's bonds, and that the bonds would be discharged. *Id.* The bond also carried a guarantee, and the plan provided that the guarantee would be canceled. *Id.* The respondent in *Stoll* was a bondholder of the debtor corporation who did not object to the confirmation. *Id.* The respondent instead initiated a case in state court to enforce the guarantee, and also filed a petition to vacate the confirmation order in the bankruptcy case on the basis that the Bankruptcy Court did not have power or jurisdiction to cancel the guaranty. *Id.* The Bankruptcy

Court denied the respondent's motion to vacate, and no appeal was taken from any of the bankruptcy orders. *Id.*

Thus, in *Stoll* the Supreme Court was asked to decide if the confirmation of the plan of reorganization would preclude enforcement of the guarantee in the state court action under the doctrine of *res judicata.* The Supreme Court held that the Bankruptcy Court's determination of its own jurisdiction over the matter was *res judicata* of the issue. *Id.* at 170, 59 S.Ct. at 137. Thus, having failed to appeal the Bankruptcy Court's determination, the respondent could not proceed to litigate the issue in state court. *Id.*

More recently, the Sixth Circuit Court of Appeals has applied the holding in *Stoll* to a case where a Chapter 7 Trustee, appointed after the conversion of a Chapter 11 case, attempted to avoid payment made under the Chapter 11 plan. *In re Chattanooga Wholesale Antiques, Inc.,* 930 F.2d 458 (6th Cir. 1991). The Court cited *Stoll* and held,

> Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of *any issues raised or that could have been raised* in the confirmation proceedings.

*Id.* at 463 (emphasis added).

The Sixth Circuit Court of Appeals again addressed the issue of the binding nature of the confirmation of reorganization plans in bankruptcy in *Sanders Confectionery Products v. Heller Financial,* 973 F.2d 474 (6th Cir.1992), *cert. denied,* 506 U.S. 1079, 113 S.Ct. 1046, 122 L.Ed.2d 355 (1993). Sanders Confectionery Products was a parent company of a reorganized Chapter 11 debtor which sought damages against the reorganized debtor's major creditor for common law fraud, RICO violations, and security law claims. *Id.* at 480. Sanders had participated in the plan process and did not object to the plan. *Id.* at 480–481. The Court of Appeals held because the parent corporation was a party to the bankruptcy proceeding, Sander's claims should have been brought during the bankruptcy proceeding and were barred by *res judicata. Id.* at 485. The Court ex-

plained the nature of res judicata and which claims are thus precluded as follows:

> [W]hat is important is not whether a particular claim is compulsory, but whether the claim should have been considered during the prior action. A number of adversary proceedings, culminating in an order confirming a reorganization plan, determined the rights of the parties to the [debtor's] bankruptcy. The court conducted these proceedings to resolve all of the claims currently owed by the debtor in order to discharge its debts. The confirmation order resulted in a plan paying [the major creditor's] claim against the estate in full as an unimpaired secured creditor. The claim asserted by [the parent corporation] runs counter to the bankruptcy court's determination. Accordingly, these claims ... should have been brought during the bankruptcy proceeding, and *res judicata* prevents them from being raised now.

*Id.* at 484–484.

In the case at bar, this Court is similarly aware that the claim of the IRS for interest is contrary to the plan of reorganization and should have been addressed before confirmation of the Plan. In light of the Supreme Court and Sixth Circuit Court of Appeals view of the binding nature of confirmation orders, this Court is skeptical of any attempts to presently change the Plan outside of the modification provisions of the Bankruptcy Code as provided for in § 1329 (and no motion has been made under that section.)

The Court also finds three cases outside the Sixth Circuit which are particularly persuasive in this case, *In re Szostek*, 886 F.2d 1405 (3rd Cir.1989), *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987), and *Matter of Gregory*, 705 F.2d 1118 (9th Cir.1983). In *Szostek*, a secured creditor filed an objection to the debtor's Chapter 13 plan three days after the confirmation of the plan, and thirteen days after the deadline for filed objections to the plan. 886 F.2d at 1407. The basis of the secured creditor's objection was that the plan did not provide for the present value of its claim, i.e. interest. *Id.* At issue in the case was whether a secured creditor may be deemed to have accepted a

plan by failing to object, or whether the confirmation of the Chapter 13 plan in contravention of the secured creditor's right to the present value of its claim under § 1325(a)(5)(B)(ii) was grounds for vacating the plan. *Id.* at 1405–1406.

The Third Circuit Court of Appeals concluded that the policy favoring the finality of confirmation under § 1327 is stronger than the policy grounds for enforcing the present value provision of § 1325(a)(5)(B)(ii). *Id.* at 1406. In reaching this conclusion the Court quoted a leading commentator on this issue:

> [I]t is quite clear that the binding effect of a chapter 13 plan extends to any issue actually litigated between the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with section 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan was not filed in good faith, ... that the creditor should have been paid interest; that the debtor is ineligible for chapter 13 relief, or that the plan is otherwise inconsistent with the Code in violation of Section 1322(b)(10) or Section 1325(a)(1).

*Szostek*, 886 F.2d at 1409, quoting 5 Collier on Bankruptcy, § 1327.01 (5th ed. 1988). Further, the Court noted that it had previously applied this rationale against the I.R.S. in *United States ex rel. I.R.S. v. Norton*, 717 F.2d 767 (3rd Cir.1983), where it held that the I.R.S. could not retain overpayment of a debtor's taxes as security on a debt when the I.R.S. did not object to confirmation of the debtor's plan. *Szostek*, 886 F.2d at 1409.

The Court in *Szostek* also quoted a Sixth Circuit Court of Appeals explanation of the importance of the finality of a confirmed reorganization plan in bankruptcy:

> [T]he purpose of bankruptcy law and the provisions for reorganization could not be realized if the discharge of debtors were not complete and absolute; that if courts should relax provisions of the law and facilitate the assertion of old claims against discharged and reorganized debtors, the policy of the law would be defeated; that creditors would not participate in reorganization if they could not feel that the plan was final, and that it would be unjust and

unfair to those who had accepted and acted upon a reorganization plan if the court were thereafter to reopen the plan and change the conditions which constituted the basis of its earlier acceptance.

*Szostek*, 886 F.2d at 1409 *quoting In re Penn Central Transportation Co.*, 771 F.2d 762, 767 (3rd Cir.1985), *citing Duryee v. Erie R.R. Co.*, 175 F.2d 58, 61–63 (6th Cir.), *cert. denied*, 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 527 (1949).

Like the Court in *Szostek*, this Court also concludes that the policy regarding the binding nature of the confirmed plan outweighs the policy of a secured creditor receiving post-petition interest on its claim when such interest was not provided for in the plan. In the case herein, had the IRS timely objected to the Plan, it surely would have prevailed. This does not, however, give the IRS the right to ignore the bankruptcy proceedings for nearly two years, and expect to have its claim treated as it would have been had it timely objected to the Plan. Further, the IRS's lack of interest in this bankruptcy proceeding is further evidenced by its failure to file post Hearing briefs and other information as directed by the Court, even though an extension was informally sought and received. This Court simply finds that all policy considerations favor denial the IRS interest on its claim at this time.

The second case this Court finds persuasive in the present matter is *Republic Supply Co. v. Shoaf*, 815 F.2d 1046 (5th Cir.1987), which is very similar to *Stoll*, discussed supra. *Republic Supply* was a case outside of bankruptcy initiated in district court. In a previous bankruptcy case, the Bankruptcy Court had confirmed a reorganization plan that released a guaranty made by the principals of the debtor business. *Id.* at 1048–1049. The creditor sought to enforce its guaranty prior to the confirmation of the Chapter 11 plan, and had filed its case in district court. *Id.* at 1048. The creditor failed to timely object or appeal the confirmation of the Chapter 11 plan. *Id.* at 1049. Upon the confirmation of the plan, the guarantor then asserted the defense of *res judicata*. *Id.* The District Court rejected the

defense, and ruled in favor of the creditor. *Id.*

The Fifth Circuit Court of Appeals reversed, holding that the doctrine of res judicata barred enforcement of the guaranty. *Id.* at 1049. Further, the Court rejected the creditor's argument that the release provision of the plan was in excess of the Bankruptcy Court's jurisdiction. *Id.* at 1050. The Court explained:

Neither can we agree with [the creditor's] argument that we may disregard the release provision on grounds that it was in excess of the bankruptcy court's grant of authority. Although section 524 has generally been interpreted to preclude release of guarantors by a bankruptcy court, the statute does not by its specific words preclude the discharge of a guaranty when it has been accepted and confirmed as an integral part of a plan of reorganization. Regardless of whether that provision is inconsistent with the bankruptcy laws or within the authority of the bankruptcy court, it is nonetheless included in the Plan, which was confirmed by the bankruptcy court without objection and was not appealed. [The creditor], in effect, is now seeking to appeal the confirmed Plan and asking us to review it on its merits. Questions of the propriety or legality of the bankruptcy court confirmation order are indeed properly addressable on direct appeal. [The creditor], however, is now foreclosed from that avenue of review because it chose not to pursue it. The issue before us in this appeal is the application, not the interpretation, of the Plan.

*Id.* The Court then analyzed the specific elements of the doctrine of res judicata, including identity of parties, prior judgment rendered by a court of competent jurisdiction, final judgment on the merits, and the same cause of action. *Id.* at 1051–1054. The Court concluded that the confirmation of the plan without objection and appeal barred the enforceability of a guaranty as prohibited by the plan. *Id.* at 1054.

As with the Court in *Republic Supply*, this Court feels that the IRS is presently seeking to untimely object to the confirmation of the Debtor's Plan through another disingenuous

method. The propriety of the confirmed Plan should have been addressed before confirmation and, if necessary, pursued upon direct appeal. The IRS is now precluded from seeking this Court's review of that plan on its merits. The doctrine of res judicata, equity, and the policies underlying the Bankruptcy Code all preclude the IRS from asserting its claim for interest now, two years into the Plan.

The third case this Court finds persuasive is *Matter of Gregory*, 705 F.2d 1118 (9th Cir.1983). In *Gregory*, the Bankruptcy Court confirmed a Chapter 13 plan whereby unsecured creditors would receive "zero-payment." Subsequently, having failed to timely object to the confirmation of the plan, an unsecured creditor which had received a judgment against the debtor in state court for embezzlement brought an adversarial proceeding seeking to have the debt determined nondischargeable. The Bankruptcy Court denied the complaint, and a Bankruptcy Appellate Panel affirmed. The Ninth Circuit Court of Appeals also affirmed, holding that the debt was "provided for" under the plan, and that upon confirmation of the plan without objection, the creditor was now precluded from relitigating the issue of whether the plan was proposed in good faith. The Court explained:

> The total discharge of a claim for almost $17,000 against a convicted embezzler upon completion of a Chapter 13 plan which required only six monthly payments of less than $150 seems grossly unfair. However, the claim is legally dischargeable. [The creditor] might have objected to the confirmation of the plan on the ground that it was not proposed in good faith. Having permitted the confirmation order to become final, however, it is precluded from raising that objection in subsequent proceedings. By stating that zero payment was to be made on unsecured debts, the plan "provided for "those debts within the meaning of 11 U.S.C. § 1328(a) and when all payments were completed, they became dischargeable. Finally, the notice received by [the creditor] was at least sufficient to

put it on inquiry notice that its claim was affected.

*Id.* at 1123.

■ Though this Court is confident that no plan such as the one in *Gregory* will ever be confirmed in this Court, it nevertheless concurs with the Court of Appeals' conclusion regarding the importance of the finality of the confirmation of a Chapter 13 plan. Simply put, creditors who sleep on their rights through the confirmation process do so at their own peril. Further, the outcome in the case at bar is far less unjust than the one in *Gregory*. The IRS in the case herein merely loses the interest of its claim, not any portion of the principal of its claim. Also, there has been no indication of any lack of good character of the Debtor in this case.

This Court mentioned previously that considering the Supreme Court's analysis in *Rake*, the result may be different for pre-confirmation interest versus post-confirmation interest because of the Court's different bases for determining that oversecured creditors should receive interest for these two types of interest (§ 506(b) versus § 1325(a)(5)). The argument could be made that whether or not an oversecured creditor is deemed to have "accepted" the plan under § 1325(a)(5)(A), thereby losing its right to the present value of its claim under § 1325(a)(5)(B)(ii), the creditor has not lost its rights under § 506(b) which, according to the Court's rationale in *Rake*, provides for post-petition interest up to the effective date of the confirmed plan. This Court finds no compelling reason to make this differentiation. The bases for all the Courts' holdings in the previously discussed cases was that the confirmation of a plan controls over the propriety of the plan. To make a distinction between pre-confirmation and post-confirmation interest would undermine the equity and policy concerns on which these Courts made their determinations. This Court will not make such a distinction here.

For all these reasons this Court finds that the IRS should not be allowed to presently assert its claim for interest on its oversecured claim, two years into the plan. Because the Court finds this was the purpose of

the IRS's amendment to its proof of claim, it will be denied.

 This Court must now address the issue of whether the Debtor's failure to properly treat the IRS claim as a secured claim rather than as an unsecured priority tax claim in the Plan should change the aforementioned result. First, this Court must note that it finds no lack of good faith on the behalf of the Debtor. That is, this Court finds the error careless but not intentional. Were bad faith found, the result would be different. This Court agrees with the Court in *In re Powers*, 135 B.R. 980 (Bankr. C.D.Cal.1991), that the binding nature of a confirmed Chapter 13 plan does not bar the application of § 1307, and in particular, the requirement of good faith that has been interpreted from that section.

This Court finds that Debtor's failure to properly treat the IRS claim as a secured claim should not change the result of the binding effect of the Plan in this case. Whether the plan treated the IRS claim as secured or unsecured, it intended to pay the principal in full. This could be the reason no objection was made. In any event, despite the Debtor's error, the Plan clearly put the IRS on notice that it would not receive interest on its claim. When the plan does not even treat the claim as secured, the IRS could only have concluded that no interest would be paid on its oversecured claim. Thus, this Court concludes that the Debtor's error does not change the aforementioned result, and the IRS should be precluded from now asserting its claim for interest.

The Court is also aware that the Debtor has also asserted that the IRS has violated the automatic stay by refusing to turn over the Debtor's income tax refunds for years 1993 and 1994. Because an adversarial proceeding is the more appropriate posture for this issue, the Court will not address it here.

The Court is further aware that the United States has not replied to this Court's instruction to explain the allocation of the Debtor's tax refunds, which have been withheld, and the balance due on the back taxes. The Court will therefore order a Hearing as to why the United States should not be held in contempt for its failure to do so.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this opinion.

Accordingly, it is

**ORDERED** that the Debtor's Objection to the Amended Claim of the IRS be, and is hereby, *SUSTAINED*.

It is **FURTHER ORDERED** that a Hearing be set for Thursday, October 19, 1995 at 1:30 P.M. as to why the United States should not be held in Contempt for its failure to follow the Orders of the Court.