**In re Russell D. GRIFFITH, Debtor.**

**Bankruptcy No. 96–62181.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 25, 1996.

Edwin H. Breyfogle, Massillon, OH, for Plaintiff.

Bruce Hall, Medina, OH, for Defendant.

## MEMORANDUM OF DECISION

JAMES H. WILLIAMS, Chief Judge.

Presently before the Court is the objection to confirmation and motion to dismiss filed by Connie Griffith, a secured creditor and the former wife of Debtor, Russell D. Griffith. Mrs. Griffith's motion was filed On September 24, 1996. A hearing on this matter was conducted on October 30, 1996 and the cause was taken under advisement. For the reasons stated below, Mrs. Griffith's motion will be GRANTED.

## FACTS

Mr. and Mrs. Griffith were married on August 17, 1983 and have no children. A judgment entry granting the couple a divorce was entered by the Court of Common Pleas in Wayne County, Ohio on July 24, 1995. In the judgment, the Wayne County court incorporated a provision of an earlier referee's report and recommendation that granted Mr. Griffith ownership of a marital farm consisting of 128 acres of land, a house and several buildings located at 1454 South Smyser Road, Wooster, Ohio. The judgment also ordered Mr. Griffith to pay Mrs. Griffith $87,684.50 for her share of the marital property. Mrs. Griffith's judgment was secured by an interest in the farm.

Mr. Griffith has never made the payment mandated by the divorce order. His attempt to comply by partitioning and selling lots from the farm was unsuccessful due to his inability to convey clear title to potential purchasers.[1] As time passed, Mr. and Mrs. Griffith both created their own sale proposals. Mrs. Griffith formulated a deal where the farm would be sold in its entirety for cash. Mr. Griffith sought outside assistance in the continuation of his quest to partition the farm and keep a portion for himself.

However, in response to Mr. Griffith's lack of payment, further action was taken by the Wayne County court. In July, 1996, the farm was orally ordered to be sold, by agreement of the Griffiths, within thirty days. With no partition deal imminent and believing that his farm was about to be sold in its entirety, Mr. Griffith filed a petition for relief under Chapter 13 of Title 11 of the United States Code on August 21, 1996.

The debt owed to Mrs. Griffith and other lenders holding a secured interest in the farm is the only item of major significance in Mr. Griffith's bankruptcy case. Schedule I of his petition shows his total monthly income to be $3,483.33. Other than debts that relate to the farm, the entirety of Mr. Griffith's indebtedness amounts to $12,433.94 in unsecured, nonpriority claims.[2] Mr. Griffith has proposed a fifty-four month plan with payments of $25.00 monthly. These payments would only satisfy a small percentage of Mr. Griffith's debts. However, he proposes to pay off his debts in their entirety through the future sale of lots from his farm.

## DISCUSSION

The Court has jurisdiction in this matter by virtue of Section 1334(b) of Title 28 of the United States Code and General Order No. 84 entered in this district on July 16, 1984. This is a core proceeding under section 157(b)(2)(L) and (O) of Title 28 of the United States Code. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure.

There are numerous grounds raised by Mrs. Griffith in her motion. However, the issue of Mr. Griffith's good faith in the filing of his petition dominated the hearing held by the Court. Mrs. Griffith has asserted that the provisions of Section 1307(c) of Title 11 of the United States Code mandate the dismissal of this case.[3] Therefore, the Court will

---

1. Mr. Griffith's inability to grant clear title was apparently caused by Mrs. Griffith's lack of cooperation and hesitation by the institution holding the mortgage on the farm to grant a release.

2. Various appraisals of Mr. Griffith's farm place its value well in excess of $350,000.00. Schedule D states that he owes $295,500.00 in claims that are secured by an interest in his farm. This amount, however, should be increased by $37,684.50 as Mrs. Griffith's claim has been understated.

3. Section 1307(c) states:

   (c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—

   (1) unreasonable delay by the debtor that is prejudicial to creditors;
   (2) nonpayment of any fees and charges required under chapter 123 of title 28;
   (3) failure to file a plan timely under section 1321 of this title;
   (4) failure to commence making timely payments under section 1326 of this title;
   (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
   (6) material default by the debtor with respect to a term of a confirmed plan;

begin its analysis by examining the good faith filing requirements for a Chapter 13 petition.

The Sixth Circuit has concluded, "We are persuaded that there is good authority for the principle that lack of good faith is a valid basis of decision in a 'for cause' dismissal by a bankruptcy court." *Industrial Insurance Services, Inc. v. Zick (In re Zick)*, 931 F.2d 1124, 1127 (6th Cir.1991) (discussing dismissal in a Chapter 7 context). A similar "good faith" test has been judicially inferred for Chapter 13 filings from the "for cause" language of section 1307(c). *In the Matter of Robert John Love*, 957 F.2d 1350, 1354 (7th Cir.1992); *In re Brenner*, 189 B.R. 121, 129 (Bkrtcy.N.D.Ohio 1995).

■ While the Sixth Circuit has never defined the elements of good faith in the context of Section 1307(c), it has determined the meaning of good faith as it relates to the confirmation of a Chapter 13 plan under Section 1325(a). *Caldwell v. Hardin (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir.1990). The policy behind good faith is the same regardless of whether the issue is raised under Section 1307(c) or 1325(a). *Love*, 957 F.2d at 1356–57. Therefore, similar analysis can be used to determine good faith under both sections.

■ Under *Caldwell*, the circuit suggested twelve factors that could be examined to determine if good faith is present. These factors are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*Caldwell*, 895 F.2d at 1126–27 (citations omitted). Most of these factors are also relevant to the issues of dismissal for lack of good faith. Given the fact that Mrs. Griffith is the movant and has requested the harsh remedy of dismissal, she will bear the burden of proving her former husband's lack of good faith. This can be accomplished by determining which, if any, of the above suggested factors are applicable to the case at bar.

■ The court finds that Mr. Griffith's case is tainted by many of the twelve factors and it thus appears to have been filed in bad faith. He has proposed a plan that provides very low monthly payments with a vague pledge that all claims will eventually be paid through the sale of his farm.[4] Furthermore,

(7) revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the peti-

tion commencing such case, the information required by paragraph (1) of section 521; or (10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521.

4. While it is true that Mr. Griffith has little remaining income after his monthly expenses are paid, almost $2,000.00 of his monthly expenses are the direct result of his ownership of the farm. Mr. Griffith's remaining debts could be easily and quickly paid if he did not own the farm.

Mr. Griffith's creditors will be forced to wait up to fifty-four months to receive payment. Additionally, the accuracy of Mr. Griffith's statement about his debts must be questioned since it is clear that he has understated the value of the debt that he owes to his former wife.

However, by far the worst aspect of Mr. Griffith's case is his motivation for filing bankruptcy and the fact that his actions are an attempt to abuse the spirit of the Bankruptcy Code. Mr. Griffith admitted during the hearing before this court that his sole purpose in filing for relief under Title 11 was to avoid the sale of his farm. This was a direct effort to thwart the judicial power of the Wayne County Court of Common Pleas. Other courts in this country have dealt with efforts by debtors like Mr. Griffith who are seeking a bankruptcy appeal of a state domestic relations decision.

It must be remembered that, "Even when brought under the guise of a federal question action, a suit whose substance is domestic relations generally will not be entertained in a federal court." *Firestone v. Cleveland Trust Co.,* 654 F.2d 1212, 1215 (6th Cir.1981) (citations omitted). This basic principle cannot be applied with bright line certainty when bankruptcy law is involved. *Winn v. McCracken (In re McCracken),* 94 B.R. 467, 470 (Bkrtcy.S.D.Ohio 1988). However, bankruptcy court authority should not be exercised when it is clear that the bankruptcy action is merely a continuation of a previously litigated dispute between divorced spouses. *Id.*

A bankruptcy court should not put itself in a position where its purpose is to second guess a previous decision of a domestic relations court. *Brown v. Davis (In re Davis),* 172 B.R. 696, 700 (Bkrtcy.S.D.Ga. 1993). A debtor who seeks reexamination of an issue previously considered by a state domestic relations court is acting with improper motivation. *In re Bandini,* 165 B.R. 317, 320 (Bkrtcy.S.D.Fla.1994). Such an action violates the spirit of the Bankruptcy Code and should not be permitted.

The court concludes that it is clear that Mr. Griffith is seeking bankruptcy protection solely to avoid the effect of a judgment fully litigated before the Wayne County Court of Common Pleas. Numerous factors that have been examined demonstrate that he has filed his bankruptcy case in bad faith. The case will be dismissed. In light thereof, it is unnecessary to consider the numerous other arguments that have been raised by Mrs. Griffith.

An order in accordance with the foregoing shall issue forthwith.