**In re Ronald W. BANKS.**

**Bankruptcy No. 98–41795 S.**

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Oct. 20, 1999.

Basil Hicks, North Little Rock, AR, for debtor.

David Grace, Little Rock, AR, for defendant.

David D. Coop, North Little Rock, AR, Chapter 13 Trustee.

### AMENDED ORDER SUSTAINING OBJECTION TO CONFIRMATION AND SUSTAINING OBJECTION TO CLAIM

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of two contested matters, the debtor's Objection to Claim of Sandra Vandiver, filed on February 8, 1999, and Sandra Vandiver's Objection to Confirmation, filed on June 22, 1998, and amended, following a proposed modification, on July 17, 1998. Trial was held on June 29, 1999, and all issues stated in the objections were tried, without objection to the form of pleadings, by the parties.[1]

---

1. It was not until the filing of the post trial briefs in mid-August 1999, that debtor indicated that he believed the imposition of a constructive trust in the context of an objection to confirmation or claim is inappropriate.

The marriage of Ronald Banks and Sandra Vandiver endured for twenty years during a period when Banks was a pilot with the United States Air Force. Prior to the entry of their divorce decree, the Supreme Court issued its ruling in *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), determining that a military retirement pension is not a community property asset subject to division. Less than a year after the divorce was final, Congress overruled, in large part, the *McCarty* decision, enacting the Uniformed Services Former Spouses' Protection Act, codified at 10 U.S.C. § 1408, *et seq*. Since the divorce decree did not resolve the issues of the division of the military pension, including whether Vandiver had an interest in the pension and how it was to be divided, the pension remained subject to future litigation. *Vandiver v. Banks*, No. CA 93–105, 1993 WL 410400 (Ark.App. Oct. 13, 1993). Banks began drawing his military pension in November 1988.[2]

Litigation over the pension began in an Arkansas Chancery court in 1990 when Vandiver filed an action to partition the pension. The Chancery court thrice dismissed the suit and the Chancellor was thrice reversed. The last appellate court order, issued by the Arkansas Supreme Court on March 20, 1998, specifically held that the pension was subject to partition, and established the precise percentage to which Vandiver was entitled.

Determining that he could not afford to file a further appeal to the United States Supreme Court, and, when on a Wednesday the state court issued an order which would have permitted Vandiver to begin collecting the debt, Banks sought relief before the bankruptcy court by filing a skeletal chapter 13 petition, on Friday, April 10, 1998. Limited relief from stay was promptly granted in order that any issues remaining concerning the amount of judgment could be determined by the state court. The Chancellor issued orders in July and November 1998, finally ordering that Vandiver "was entitled to receive as her separate property" her portion of Bank's military retirement. After entry of this decree, Vandiver began receiving her allotment of the pension benefits, but at an amount calculated from the amount Banks' receives, rather than the gross amount, as directed by the Chancellor. Although it appears from the state court orders that Banks is under an obligation to make up the difference, he does not appear to have done so. Rather, he increased his plan payment by approximately that amount. From this apparent maneuvering, Vandiver asserts that the debtor is seeking to take Vandiver's property to fund, in part, payment of his debt to her.[3]

**2.** Banks' military pension is not the only pension upon which he will be entitled to rely in his retirement years. He is currently employed and has other retirement interests. Mrs. Vandiver, as a military wife working only within the home during the marital years, has no retirement interests.

**3.** Banks asserts that the calculations made by the Defense Finance and Accounting Service are binding upon Vandiver. Although the Arkansas appellate court decisions state, in part, that Vandiver's rights arise under common law and the Chancery Court order states, in italicized print, that the amounts due Vandiver are to be calculated by the *gross* amount due to Banks, Vandiver's rights under the order do appear to be limited by the Uniform Services Former Spouse Protection Act, under which only disposable retired pay is subject to division at all. 10 U.S.C. § 1408(c) provides that a state court may "treat" "disposable retired pay" pursuant to state law. Disposable retired pay consists of the "total monthly retired pay to which a member is entitled" less very specific deductions, including, under current law, overpayments, deductions ordered pursuant to court martial or other matters which have no relevance here. *See* 10 U.S.C. § 1408(a)(4). Unfortunately for Vandiver, however, the version of the statute which must be applied by this Court also deducts other items, including federal and state income taxes. *See* Pub.L. 101–510, § 555(e) (1990), as amended Pub.L. 102–190, § 1062(a)(1) (1991). *See generally In re MacMeeken*, 117 B.R. 642 (D.Kan.1990) (discussing *Mansell v. Mansell*, 490 U.S. 581, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989) and distinguishing effect of 10 U.S.C. § 1408(c), (d), (e)). *Cf. Ashley v. Ashley*, 337 Ark. 362, 990 S.W.2d 507 (1999).

Banks and his nondebtor spouse, apparently have little, if any, debt. The schedules reveal four debts on the date of the filing of the petition: a mortgage, a $500 attorney fee,[4] an insurance policy loan[5] and Vandiver. In the months prior to bankruptcy, Banks paid all of his debts as well as his wife's credit card bills to, among other stores, Neiman–Marcus and Talbots. Credit card payments in the months prior to bankruptcy totaled over $10,000. The plan, first filed on May 28, 1998, and subsequently modified, provided that the mortgage was to be paid outside the plan and that unsecured creditors would be paid on a *pro rata* basis from the payments made during the three year plan. Debtor's calculations during his deposition indicate that Vandiver would receive somewhat less than fifteen percent of her claim. Vandiver objected to each of the plans on the basis that they were not filed in good faith, she is entitled to imposition of a constructive trust, and that she has an equitable lien on the pension funds.

Vandiver's proof of claim, filed on March 3, 1999, asserts a total claim of $202,369.68. of which $177,372.83 is claimed as secured based upon the judgment and orders awarding her a prepetition share of the military retirement. Vandiver claims a secured interest through a constructive trust or equitable lien. In addition, Vandiver asserts an unsecured claim for costs and fees in the amount of $24,996.85. The debtor does not dispute these amounts but objects to the proof of claim to the extent Vandiver claims a secured interest.

### Nature of Vandiver's Interest

■ The debtor asserts that Vandiver may not assert a secured claim in this bankruptcy case. Vandiver, however, requests that this Court either impose a constructive trust upon property of the debtor or determine that she holds an equitable lien. While the Court believes that Vandiver has may have placed sufficient evidence in the record to support entitlement to an equitable lien or imposition of a constructive trust, this Court is without jurisdiction to do so because of the manner in which it is presented to the Court. Specifically, both the imposition of a constructive trust and determination of an equitable lien require the due process requirements of an adversary proceeding. *In re Holywell Corporation,* 48 B.R. 69 (Bankr.S.D.Fla.1985); Fed.R.Bankr.P. 7001. While the Court believes that all parties necessary to an adversary proceeding are before the Court, have sufficient notice, and in fact litigated all of the issues, Banks has raised the issue of the Court's authority to impose a lien and it is indeed questionable whether the Court has jurisdiction to impose or determine the existence of a security interest without the procedural safeguards required by title 28 and the Federal Rules of Bankruptcy Procedure. Accordingly, although the matter was tried and the Court believes Vandiver has demonstrated her entitlement to, at a minimum, a security interest, the Court cannot under the circumstances render a final decision on the issue at this time.

### The Good Faith Requirement

■ The debtor in this case is a well-educated, well-employed individual who has no need for reorganization or discharge of debt. The debtor and his wife own three cars, including a pick-up, a Cadillac and a Porsche—the debtor's "hobby car." The debtor's wife is not employed outside the home and they have the ability to support her non-essential shopping habits and pay for her son's college education. The only debts they have, above normal monthly expenses, are the mortgage, a small loan on an insurance policy, and

---

4. A review of the Court's file reveals that the attorney waived this fee. *Application to Employ Attorney for Special Purpose* (filed June 10, 1998); *Order Authorizing Employment of Attorney* (entered June 24, 1998). Thus, all

unsecured debt in this case is owed to Vandiver.

5. The insurance policy loan is also, effectively, paid outside the plan.

monthly incurred credit card charges.[6] The evidence does not demonstrate that they live a luxurious lifestyle, but they clearly have no difficulty living within rather comfortable means. In addition to being able to support himself and his wife, Banks' demeanor and testimony reveal that he is a meticulous man, clearly capable of carefully tracking, planning and organizing his finances. He has no need for either statutory debt relief or an imposed reorganization scheme.

The chapter 13 plan proposes to pay his unsecured creditors approximately fifteen percent of the debt owed, over a three year period.[7] However, the only unsecured creditor the debtor has is his former spouse. The only debt to be paid pursuant to this plan is a portion of a pension he is required to pay to his former spouse. The debtor admits that he filed this chapter 13 case because he was about to be compelled to pay the long-unpaid benefits. Having been finally ordered by the state Chancery Court to pay the past due amounts to his former spouse, he sought to circumvent the state court's authority and to thwart his former spouse by filing a bankruptcy case and substantially devaluing her claim.

■ The purpose of the Bankruptcy Code is to provide debt relief to debtors who require a "fresh start." It is not a forum to avoid the import of state court decisions or other lawful obligations. *See In re Huckfeldt,* 39 F.3d 829 (8th Cir. 1994); *In re Maras,* 226 B.R. 696 (Bankr. N.D.Okla.1998); *In re Griffith,* 203 B.R. 422 (Bankr.N.D.Ohio 1996) (case dismissed where it was "clear that the bankruptcy action is merely a continuation of a previously litigated dispute between divorced spouses."); *In re Casey,* 198 B.R. 910 (Bankr.S.D.Cal.1996) (bad faith exists when the case is filed for the purpose of continuing or collaterally attacking state court litigation between debtor and former spouse); *In re Bandini,* 165 B.R. 317 (Bankr.S.D.Fla.1994); *Rogers v. Overstreet (In re Rogers),* 164 B.R. 382 (Bankr. N.D.Ga.1994) (case filed in bad faith were admitted purpose was to circumvent state court obligations). *See also In re Lewis,* 227 B.R. 886 (Bankr.W.D.Ark.1998).

This debtor is not in need of bankruptcy relief and filed his chapter 13 plan solely to ensure that is former spouse does not obtain most of the pension money to which she is entitled, but which he chose to spend. The plan proposes to pay his former spouse a meager portion of the amount to which she is not only entitled, but needs. The plan, as such, is not filed in good faith and cannot be confirmed. At minimum, since this debtor filed a case without either the need for relief from debt or the desire for reorganization, but merely sought to avoid payment of a single debt, any modification which would meet the good faith standard must provide for payment for the entire debt, either in full within the time limits of chapter 13, or provide that repayment of the debt will be a continuing one.

Based upon the foregoing, it is

**ORDERED** as follows:

1. The debtor's Objection to Claim of Sandra Vandiver, filed on February 8, 1999, is sustained without prejudice to Vandiver filing an appropriate adversary proceeding and motion for reconsideration under Rule 3008.

2. Sandra Vandiver's Objection to Confirmation, filed on June 22, 1998, and amended, following a proposed modification, on July 17, 1998, is sustained. 11 U.S.C. § 1325(a)(3).

3. The debtor shall file and serve a modification of the plan consistent with the Court's findings within twenty (20) days of entry of this Order. Failure to file the

---

**6.** Debtor does not generally use his credit cards. These expenses belong to the nondebtor wife.

**7.** Debtors may propose a plan which provides for payments over a period of five years. 11 U.S.C. § 1322(d).

modification will result in dismissal of the case without further notice or hearing.

**IT IS SO ORDERED.**