**In re Steve O'Dell PEARSON and Debra Suzanne Pearson, Debtors.**

**Bankruptcy No. 95–31244.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

April 16, 1997.

H. Buswell Roberts, Toledo, OH, Trustee.

Ralph Lewis Attorney, U.S. Attorney's Office, Toledo, OH, for IRS.

Louis J. Yoppolo, Toledo, OH, for Debtors.

**MEMORANDUM OPINION
AND DECISION**

RICHAED L. SPEER, Chief Judge.

This cause comes before the Court upon the Debtors' Motion For Order Directing Internal Revenue Service To Release Lien, and the United States' Opposition. This Court has reviewed the arguments of counsel, exhibits as well as the entire record in the case. Based upon that review, and for the following reasons, the Court will deny the Debtors' Motion.

### FACTS

Debtor filed a Chapter 13 petition on May 19, 1995. On the same day the Debtors filed a Chapter 13 plan which called for a payout of "100% to all unsecured creditors including the Internal Revenue Service whose lien is totally unsecured." On July 14, 1995, a Hearing on Confirmation of the Debtors' Plan was held, and a Confirmation Order was entered on August 10, 1995. Neither the United States (hereafter "IRS") nor any other creditor objected to the Plan.

On October 6, 1995, the IRS filed a proof of claim setting forth Eleven Thousand Six Hundred Twenty-four and 75/100 Dollars ($11,624.75) in secured claims, Two Thousand Eight Hundred Eighty-eight and 97/100 Dollars ($2,888.97) in priority claims, and Two Hundred Seventy-six and 10/100 Dollars ($276.10) in general unsecured claims, for a total of Fourteen Thousand Seven Hundred Eighty-nine and 82/100 Dollars ($14,789.82). On October 20, 1995, the Debtors filed an objection to the IRS's claim. The basis for the objection was that the proof of claim filed by the IRS stated that the claim was partially secured, rather than unsecured, because there was no equity in the underlying collateral. The Objection also stated that the taxes for certain tax years had been paid through a previous Chapter 13 case. In response to the objection, the IRS filed an amended proof of claim on November 3, 1995, which listed One Thousand Six and 27/100 Dollars ($1,006.27) in general unsecured claims and Nine Thousand Eight Hundred Ninety-one and 07/100 Dollars ($9,891.07) in unsecured priority claims, for a

total claim of Ten Thousand Eight Hundred Ninety-seven and 34/100 Dollars ($10,897.34).

The Debtors were still not satisfied, and filed a Supplement to Objection to Claim of IRS on January 30, 1996. The sole basis of this objection was that the tax claims should not be accorded priority treatment due to their age. The Supplement to Objection concluded that "under these circumstances, it is clear that the claim of the Internal Revenue Service as amended can only be an unsecured claim herein." It appears that the IRS agreed, and a Stipulation Sustaining Debtor's Objection to Claim of the Internal Revenue Service was entered into and signed by the Court on February 29, 1996. The Stipulation states that the IRS's October 24, 1995, proof of claim in the amount often Thousand Eight Hundred Ninety-seven and 34/100 Dollars ($10,897.34) "should be an allowed unsecured non-priority claim herein."

On March 25, 1996, the Debtors filed a Motion For Order Directing the Internal Revenue Service to Release Lien, which is the matter at hand. A Hearing on the Motion was held on April 18, 1996, and the Court afforded the parties the opportunity to file post-hearing briefs. On April 23, 1996, the Debtor filed a Notice of Conversion of Chapter 13 Case to a Chapter 7. The parties have subsequently filed their post-hearing briefs.

## LAW

The Bankruptcy Code, 11 U.S.C. § 101 et seq., provides in pertinent part:

**11 U.S.C. § 101. Definitions**

(51) "security interest" means a lien created by an agreement;

**11 U.S.C. § 105. Power of Court**

(a) The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

**11 U.S.C. § 348. Effect of conversion**

(f)(1) Except as provided in paragraph (2), when a case under chapter 13 of this title is converted to a case under another chapter of this title—

(A) property of the estate in the converted case shall consist of property of the estate, as of the date of the filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion; and

(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims in the chapter 13 case reduced to the extent that they have been paid in accordance with the chapter 13 plan.

(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.

**11 U.S.C. § 349. Effect of dismissal**

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of the title—

(1) reinstates—

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) if this title, or preserved under section 510(c)(2), 522(I)(2), or 551 of this title; and

(C) any lien voided under section 506(d) if this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(I)(1), 542, 550, or 553 if this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

**11 U.S.C. § 502. Allowance of claims or interests**

(a) A claim or interest, proof of which is filed under section 501 if this title, is

deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

(b) Except as provided in subsection (e)(2), (f), (g), (h) and (I) of this section, if such objection to a claim is made, the court, after notice and hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow the claim in lawful currency of the United States in such amount, except to the extent that . . .

### 11 U.S.C. § 506. Determination of secured status

(a) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of the creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the claim of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the calculation and the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use on in a plan affecting such creditor's interest.

(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void, unless—

(1) such a claim was disallowed only under section 502(b)(5) or 502(e) of this title; or

(2) such a claim is not an allowed secured claim due only to the failure of any entity to file a proof of such claim under section 501 of this title.

### 11 U.S.C. § 722. Redemption

An individual debtor may, whether or not the debtor has waived the right to redeem under this section, redeem tangible personal property intended primarily for personal, family, or household use, from a lien securing a dischargeable consumer debt, if such property is exempted under section 522 of this title, by paying the holder of such lien the amount of the allowed secured claim of such holder that is secured by such lien.

### 11 U.S.C. § 1307. Conversion or dismissal

(a) The debtor may convert a case under this chapter to a case under chapter 7 of this title at any time. Any waiver of the right to convert under this subsection is unenforceable.

### 11 U.S.C. § 1322. Contents of Plan

(b) Subject to subsections (a) and (c) of this section, the plan may—

(2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

### DISCUSSION

 Determinations concerning the allowance or disallowance of claims against the estate, determinations concerning the validity, extent, or priority of liens, confirmation of plans, and other proceedings affecting the adjustment of the debtor-creditor relationship are core proceedings pursuant to 28 U.S.C. § 157. Thus, this case is a core proceeding.

This Court finds the issues presented in this case are as follows: (1) does the Stipulation resulting from the Debtors' objections to the IRS's proof of claims require the IRS to remove its lien on the Debtors' property; (2) does the filing of IRS's amended proof of claim stating that the debt is unsecured require the IRS to remove its lien; (3) does the Debtors' confirmed Chapter 13 Plan, to which the IRS did not object, require the IRS to remove its lien; (4) may the Debtors have the IRS's lien stripped down to the value of the equity in the collateral, which is zero. This final issue is complicated by the fact that the Debtors' Chapter 13 case was converted to a Chapter 7 case approximately nine months into the Plan, and thus demands an analysis of the law concerning lien stripping in Chapter 13 cases.

■ Turning to the first issue, this Court must determine whether or not it should require the IRS to remove its lien based upon the stipulation resolving the supplemental objection to the proof of claim, in which the IRS stipulates that its claim is unsecured. Initially, this Court finds it necessary to address an argument made by the IRS at the Hearing. The IRS stated that determinations made by the Bankruptcy Court have no efficacy outside of the bankruptcy courtroom or bankruptcy context. It would appear that the IRS is confused. It has been held that when a Chapter 13 plan is abandoned by debtor, creditors are no longer bound by the terms of the plan and the debtor is barred from claiming any benefits provided thereunder. *In re Shaffer,* 48 B.R. 952, 957 (Bankr.N.D.Ohio 1985). See also *In re Burba,* 1994 WL 709314 (6th Cir.).[1] However, this rule is inapplicable when an objection to claim has been made independent of the plan, and claim has been adjudicated. In such a circumstance, the claim has been properly litigated in Bankruptcy Court, a Court of competent jurisdiction, and the doctrine of res judicata applies.

■ Further, this Court believes that Congress has made it clear that when a United States Bankruptcy Court makes a determination of the allowability of a claim underlying a lien, and accordingly orders the lien avoided to the extent that it exceeds the amount of the claim, such avoidance will survive the bankruptcy in accordance with § 506(d) and § 349.[2] Thus, if the stipulation issued in this case resolved the amount of the underlying claim, this Court could order the removal of the lien to that extent that the lien exceeded to amount of the underlying claim.

■ Unfortunately, the issue is not so easily resolved. This Court finds the stipulation ambiguous as to whether it was intended that the IRS would remove its lien. Thus, this Court must look behind the language of the document to determine its intention. The stipulation was the result of the Debtors' objections to the IRS's proof of claims. The

basis of the objections was not that the lien was improperly filed or perfected, or that the underlying claim was invalid. Rather, the purpose of the stipulation was to provide that the IRS would receive distribution in the Chapter 13 case as would an unsecured creditor, because it was uncontested that there was presently no equity in the underlying collateral to which its lien could attach. The IRS was not stipulating that the lien was invalid or improperly perfected. Nor is there any indication that a deal was struck whereby the IRS would remove its lien in return for some other consideration. Though it is beyond question that the more cautionary language in the stipulation would have more adequately protected the IRS from possible misinterpretation, this Court is reluctant to order the removal of liens where it is not clear that the parties intended such a result.

This conclusion is supported by *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992). Though the Supreme Court left several issues unresolved when it wrote *Dewsnup,* one lesson is clear. That is that the general rule that liens pass through bankruptcy unaffected is not one to be taken lightly. 502 U.S. at 416–420, 112 S.Ct. at 778–779. Further this Court believes that secured creditors should not have to enter into bankruptcy negotiations with the fear that unintended errors which caused no reliance or harm could work to eliminate their secured status. In this case, this Court finds that the IRS was referring to its claim as unsecured as a reference to the fact that it would not be paid as a secured creditor in the bankruptcy. The intent of the IRS in signing the stipulation was not that it would remove what has not been alleged to be anything other than a valid lien.

■ A similar situation arises with the second issue, which is whether or not the IRS should be ordered to remove its lien because it filed a proof of claim indicating that its claim is unsecured. Again, this Court believes that the IRS was trying to

---

1. These cases are discussed in more detail infra.

2. This issue relates to the Supreme Court opinion of *Dewsnup v. Timm,* 502 U.S. 410, 112 S.Ct.

773, 116 L.Ed.2d 903 (1992), which will be discussed infra. Accordingly, this issue will also be addressed infra.

settle the Debtors' objection to their proof of claim as to their non-priority status and as to the value of the underlying collateral. The IRS understood that they would not receive any payment as a secured creditor in this bankruptcy. This Court does not believe that the purpose for the settlement or the amended proof of claim was that the IRS would remove their lien.

■ The third issue is whether or not this Court should require the IRS to remove their lien based on the Debtors' confirmed Chapter 13 plan, which states that the IRS's claim is "totally unsecured." Initially, it should be noted that the propriety of the plan provision is not at issue. This Court has made it clear that when a creditor does not object to a plan, it is precluded from later raising objections to its confirmability. *In re Brenner*, 189 B.R. 121 (Bankr.N.D.Ohio 1995). However, this Court has also previously held that as the drafter of the plan, a debtor bears the burden of any ambiguity. *In re Hahn*, 1996 WL 303296, citing *In re Terex Corp.*, 984 F.2d at 174–175, citing *In re Fawcett*, 758 F.2d 588, 591 (11th Cir.1985) and *In re Arrow Air, Inc.*, 101 B.R. 332, 335 (S.D.Fla.1989). See also *In re Harstad*, 155 B.R. 500, 510–511 (Bankr.D.Minn.1993) citing *In re Adelman v. Minnwest Bank*, 97 B.R. 569, 572 (D.S.D.1988), *Local 238 v. C.R.S.T., Inc.*, 795 F.2d 1400, 1406 (8th Cir.) *cert. denied*, 479 U.S. 1007, 107 S.Ct. 647, 93 L.Ed.2d 702 (1986), *Premier Resources Ltd. v. Northern Natural Gas Co.*, 616 F.2d 1171, 1178 (10th Cir.1980), *Restatement (Second) of Contracts* § 206 (1979), and *In re Stratford of Texas, Inc.*, 635 F.2d 365, 368 (5th Cir.1981). Further, as noted above, the avoidance of liens is not something that is to be undertaken in a cavalier manner. It would be improper in this case to cause the secured creditor remove its lien where the plan has not specifically directed them to do so, or at least where such a result is necessarily implied.

■ This Court also feels that a creditor should not be bound by a Chapter 13 plan when the debtors have failed to comply with it themselves. This was the sentiment of the Sixth Circuit Court of Appeals in *In re Burba*, 1994 WL 709314, pgs. 9–10 (6th Cir.), following *Smith v. No. 2 Galesburg Crown Finance Corp.*, 615 F.2d 407 (7th Cir.1980) and *In re Shaffer*, 48 B.R. 952 (Bankr. N.D.Ohio 1985). Though the more specific holding in *Burba*, that valuations made in a Chapter 13 plan were not binding in a converted Chapter 7, was expressly dealt with to the contrary by the Bankruptcy Reform Act of 1994 addition of § 348(f), the more general portion of the holding regarding the nonbinding effect of Chapter 13 plan where a debtor fails to complete payments appears to remain valid. The Court held:

> Although § 1327(a) states that both the debtor and the creditor are bound by the terms of a confirmed Chapter 13 plan, this is not literally true. The creditors are bound as long as the debtor complies with the plan. The debtor, however, is free to abandon the plan at any time, and the creditors cannot then force the debtor to comply with the terms of the plan. However, if the debtor complies with the terms of the plan, then the creditors will be bound. We agree with the court in *Shaffer* that it would be inequitable to hold, in addition, that creditors are bound to the terms of a Chapter 13 plan which the debtor has freely abandoned upon conversion to Chapter 7.

*Burba* at 10 (citations omitted).

■ The fourth and final issue involves the doctrine of lien stripping in Chapter 13. The concept of lien stripping in Chapter 13 is that a debtor may pay the value of the collateral securing an undersecured creditor's claim, and then have the lien removed. What is novel in this case is that the Debtors argue that lien stripping occurred in their Chapter 13 case even though no payments were made on the secured portion of the claim, because this portion was zero. The Debtors frame the issue as a choice between two competing lines of cases. The first line of cases holds that a the debtor may not have the lien removed until all payments, including payments to unsecured creditor, have been completed under the plan, and a discharge is received. See *In re Holiday*, 1993 WL 733165 (Bankr.S.D.Ga.1993); *In re Gibbons*, 164 B.R. 207 (Bankr.D.N.H.1993); *In re Kinder*, 139 B.R. 743 (Bankr.W.D.Okl.

1992); *In re Leverett,* 145 B.R. 709 (Bankr. W.D.Okl.1992). The second line of cases holds that a debtor may have the lien removed as soon as the secured portion of the claim has been paid. See *In re Lee,* 156 B.R. 628 (Bankr.D.Minn.1993); *In re Campbell,* 160 B.R. 198 (Bankr.M.D.Fla.1993); *In re Murry–Hudson,* 147 B.R. 960 (Bankr. N.D.Cal.1992). The Debtors in the present case urge the Court to follow the second line of cases, and order the IRS to remove the lien because the value of the secured portion of their lien, being zero, has been paid.

▮ This Court declines to follow either of the above line of cases and will instead hold that debtors may only have liens removed upon payment of the value of the underlying collateral prior to the completion of the Chapter 13 plan in situations where the lien at issue would be subject to redemption in a Chapter 7 case. This Court believes that allowing debtors to strip liens that are not subject to redemption in Chapter 7 cases before the completion of the plan would amount to an abuse of the bankruptcy process in light of this Court's understanding of the Bankruptcy Code and the Supreme Court cases on the subject of lien stripping. As promised supra, a discussion of *Dewsnup* is in order. Because the Supreme Court case of *Nobelman v. American Savings Bank,* 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), also addressed the issue of lien stripping, it will be discussed as well. Along the way it will also be helpful to understand the purpose of § 506(d). This analysis of lien stripping will then be harmonized with the cases in this jurisdiction concerning the conversion of a Chapter 13 case to a Chapter 7 case, *Shaffer* and *Burba,* discussed supra. Finally, this Court will analyze the Bankruptcy Reform Act of 1994's addition to § 348(f) to the Bankruptcy Code, with particular attention to § 348(f)(1)(B).

In *Dewsnup,* the debtor sought to have a creditor's lien removed under § 506(d). The Court looked to the long standing rule, existing before the Bankruptcy Code was enacted, that liens generally pass through bankruptcy unaffected, and held that absent specific statutory language or clear legislative intent, § 506(d) should not be interpreted to allow

the reduction of liens to the value of the underlying collateral because doing so would rob the secured creditor of its rights to an increase in the value of the collateral up to the time of foreclosure. 502 U.S. at 416, 112 S.Ct. at 778. This Court believes that the Court's holding expresses a strong concern for the property rights of the secured creditor. However, the Supreme Court declined to answer exactly what § 506(d), in conjunction with § 506(a) and § 502(b), operates to do. *Id.* This Court believes that the legislative history provides an answer, which will help clarify the Supreme Court's holding:
House Report (Reform Act of 1978)

Subsection (d) permits liens to pass through the bankruptcy case unaffected. However, if a party in interest requests the court to determine and allow or disallow the claim secured by a lien under section 502 and the claim is not allowed, then the lien is void to the extent that the claim is not allowed. The voiding provision does not apply to claims disallowed only under section 502(e), which requires disallowance of certain claims against a debtor by a codebtor, surety, or guarantor for contribution or reimbursement.

H.R. Rep. No. 595, 95th Cong., 1st Sess 357 (1977).

▮ Thus, it is clear that a lien cannot be avoided under § 506(d) unless the underlying claim has been disallowed per an objection to claim adjudication. Indeed, this Court has previously explained this provision:

Section 506(d) requires that a secured claim be disallowed as a prerequisite to avoidance of the lien. Disallowance of claims, however, is controlled by Section 502 which provides that a claim is deemed allowed unless a party in interest objects, 11 U.S.C. § 502(a). A lien will not be void by terms of 11 U.S.C. § 506(d) unless a party requests a determination of allowability for the claim which the lien secured under 11 U.S.C. § 502(a). *In re Wolf,* 58 B.R. 354 (Bankr.N.D.Ohio 1986) (citing *Simmons v. Savell,* 765 F.2d 547 (5th Cir. 1985); *In re Endlich,* 47 B.R. 802 (Bankr. E.D.N.Y.1985); *In re Schneider,* 37 B.R. 115 (Bankr.E.D.N.Y.1984); *Nefferdorf v. Federal National Mortgage Association,*

26 B.R. 962) (Bankr.E.D.Pa.1983); and *Spadel v. Household Consumer Discount Co.*, 28 B.R. 537 (Bankr.E.D.Pa.1983). *In re Wise*, 151 B.R. 116, 119 (Bankr. N.D.Ohio 1992).

Thus, as noted supra, the purpose of § 506(d) is to clarify the res judicata effect of a Bankruptcy Court determination made under § 502(a) by providing that such a finding will also serve to void a lien to the extent the underlying claim is not valid. Accordingly, determinations of claims made under § 502(a) survive the bankruptcy, and liens avoided after a claims adjudication will also remain avoided [3] Thus, referring back to the first issue in this case, had this Court found that the stipulation avoided the IRS's lien, it would remain resolved upon the conversion or completion of the 13 case. Further, even were the case dismissed, this Court could, for cause, allow the lien to remain avoided.[4]

What is important for the purpose of understanding lien stripping is from which provision of the Bankruptcy Code it originates. Although after *Dewsnup* courts have not allowed lien stripping in Chapter 7 cases, it is still allowed in reorganization cases. See 3 Collier on Bankruptcy § 506.07, 506–81–82 (Fifteenth Edition 1996). Although in *Dewsnup* the debtors argued that lien stripping occurred under § 506(d), they argued that it worked in conjunction with § 506(a), which provides for the bifurcation of an undersecured claim into a secured portion to the extent of the value of the collateral, and an unsecured portion of the remainder. 502 U.S. at 412–416, 112 S.Ct at 776–777. However, the Supreme Court's reasoning for not allowing lien stripping under § 506(d) applies equally well to § 506(a). That is, there is no unambiguous statutory language or clear legislative history which would allow lien stripping under § 506(a) either. Therefore it is

proper that lien stripping not be allowed in Chapter 7 cases.

However, the reorganization chapters are different. They have provisions allowing the modification of secured claims. Therefore, if lien stripping is allowable at all, it must originate with those provisions either alone, or in conjunction with § 506(a). In Chapter 13, the provision is § 1322(b).

The issue in *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), dealt with the interplay between § 506(a) and § 1322(b), but the Supreme Court chose to address only the narrow issue involved in the case rather than address the propriety of lien stripping in general. In *Nobelman*, the debtors argued that they should be allowed to strip the security interest in their principal residence down to the value of the collateral. Regarding the interplay between § 506(a) and § 1322(b), the debtors argued that § 506(a) determines the amount of the secured claim, and § 1322(b) allows for further modification of the secured claim. 508 U.S. at 326–328, 113 S.Ct. at 2109. (Section 1322(b) provided no comfort for the debtors in that case because § 1322(b) does not allow for the modification of a security interest in the debtor's principal residence.)[5] The Supreme Court did not reach the issue of the legal basis for lien stripping, but simply held that reading the statute as debtors wish would run contrary to the home mortgage creditor's "rights" which are protected by § 1322(b). *Id.* at 328–332, 113 S.Ct. at 2110–2111. Nor did the Court reach the issue of whether lien stripping is indeed proper at all, and what that legal basis would be. Some courts, however, have used *Nobelman* to bolster the propriety of lien stripping in reorganization cases, especially Chapter 13, reasoning that the Supreme Court could not have reached

**3.** An exception to this rule is provided in § 349(b)(1)(C), which says that upon the dismissal of a bankruptcy case, the lien avoided by § 506(d) is reinstated. This furthers the goal of § 349(b) to undo the bankruptcy case upon dismissal. 2 Collier on Bankruptcy, § 349.03, pp. 349–10 (15th ed. 1995).

**4.** Section 349 allows a bankruptcy court to not reinstate a lien avoided under § 506(d) for cause.

**5.** It should be noted that the lien at issue in the case at bar is secured by the Debtor's principal residence. However, it does not fall within the exception to modification under § 1322(b) because it is not the result of a "security interest," as provided in that section. Section 101(51) makes clear that for a lien to be a "security interest" it must be created by an agreement. Few people have ever voluntarily agreed to a tax lien.

the issue it did if it did not believe lien stripping was proper in the first place. *In re Gibbons*, 164 B.R. 717, 718 (Bankr.D.N.H. 1993); *In re Hirsch*, 155 B.R. 688, 689–90 (Bankr.E.D.Pa.1993). Considering the narrowness of the Supreme Court's holdings in *Dewsnup and Nobelman, this* Court is uncertain whether the Court would have raised the issue if it was not raised by the parties.

Upon analyzing the Supreme Court's holdings in *Dewsnup and Nobelman,* this Court concludes that the propriety of lien stripping originates at least in part from specific provisions in those chapters which allow for the modification of secured claims. In Chapter 13, this particular provision would be § 1322(b), which allows debtors to modify the rights of secured creditors *in the Chapter 13 plan.*

■ This principle can now be applied to the case herein, bearing in mind also the principle discussed supra that when Chapter 13 plans are abandoned by debtors, creditors are no longer bound by the terms of the plan and debtors are barred from claiming any benefits provided thereunder. *See In re Burba,* 1994 WL 709314 (6th Cir.) and *In re Shaffer,* 48 B.R. 952, 957 (Bankr.N.D.Ohio 1985). This Court holds that the debtors cannot claim the particular benefits of lien stripping in a Chapter 13 case when they have not themselves complied with the provisions of their own plan. Allowing the Debtors in this case to file under Chapter 13, remain in Chapter 13 for just nine months, then convert the case to Chapter 7 and demand to retain the benefits of Chapter 13 in the converted case, works an injustice to the provisions of the Bankruptcy Code as well as the Supreme Court's holding in *Dewsnup.* Chapter 13 provides extra duties as well as extra benefits over a Chapter 7 liquidation. This Court is not prepared to allow debtors to file a case in Chapter 13, invoke the benefits of that chapter, then convert the case to Chapter 7, especially considering the fact that the Chapter 13 debtors may convert their case as of right per § 1307(a).

However, a debtor should not be discouraged from honestly attempting a Chapter 13 reorganization, either. Indeed, the legislative history behind a new provision to the

Bankruptcy Code makes this goal clear. This new provision, which was added by the Bankruptcy Reform Act of 1994, is § 348(f)(1)(B). It provides that valuations of collateral made in the Chapter 13 shall remain upon conversion of the case to Chapter 7, and the secured claim shall be reduced to the extent of payments made on the secured portion. The general purpose of § 348(f) was to equalize the treatment a debtor would receive under a Chapter 13 case that converted to a Chapter 7 case with the treatment the debtor would receive if he filed a Chapter 7 originally. The legislative history makes clear that Congress was concerned that debtors would be counseled to file Chapter 7 cases rather than Chapter 13 cases because, in the event the plan could not be completed and the debtor would have to convert to a Chapter 7, debtors would lose any equity in the collateral they may have gained by making payments on the secured claim during the Chapter 13. H.R. Rep. 103–834, 103rd Cong., 2nd Sess. 42–43 (Oct. 4, 1994); 140 Cong. Rec. H10770 (Oct. 4, 1994). That is, if the debtor had filed a Chapter 7 case and thereafter made the same payments on the secured claim they would have made under the Chapter 13 plan, they would be able to retain the equity so derived. Thus, Congress showed its concern that debtors not be discouraged from filing Chapter 13 cases which they may subsequently have to convert to Chapter 7.

A Bankruptcy Court in this district has recently cited this new provision to bolster its decision to choose to follow the line of cases which allow lien stripping upon payment of the value of the collateral. *In re Nicewonger,* 192 B.R. 886, 889 (Bankr. N.D.Ohio 1996) ("That conclusion is consistent with the language and intent of the Bankruptcy Code, particularly as evinced in the 1994 amendment of 11 U.S.C. § 348(f)(2)(B).") This Court does not believe this provision was intended to address the issue of lien stripping, though in effect it may sometimes have similar results in a converted case.

There is no legislative history of § 348(f)(2)(B) which explicitly addresses Congress's intent regarding lien stripping.

Accordingly, pursuant to *Dewsnup,* absent clear legislative intent or clear unambiguous language, Congress could not have intended to overturn the well accepted principle that liens pass through bankruptcy unaffected. 502 U.S. at 416–418, 112 S.Ct. at 778. The specific purpose of § 348(f), therefore, must be something that concerns secured claim valuations but not lien stripping. Such a purpose is the valuation of secured claims for the purposes of redemption under § 722 in a Chapter 7 case. Indeed, this was an area of the law that was unresolved before the Reform Act changes.[6] This Court believes § 348(f)(1)(B) simply resolves this conflict.

Another case cited by the Debtors exemplifies this point. In *In re Stoddard,* 167 B.R. 98 (Bankr.S.D.Ohio 1994), the Court followed the rule, subsequently adopted in § 348(f)(1)(B), that the valuation of collateral in the Chapter 13 case should apply for purposes of redemption when the case was converted to Chapter 7. *Id.* at 101. Thus, because the debtor in that case had paid the fair market value of his car in the Chapter 13 case, he was able to redeem the vehicle without any additional payments. Id. This case illustrates that the purpose of a rule such as § 348(f)(1)(B) would be for redemption purposes, and reflects the logic that a debtor should not be penalized for attempting to pay a portion of his debts in a Chapter 13 case. That is, if the debtor had not been allowed to redeem the car with no additional payments, he could have lost the value of his post-petition payments he made during the Chapter 13 case. Such a result would work a disincentive for filing Chapter 13 cases.

The contrary is true in the case at bar. In the present case, if this Court were to allow the Debtors to have the IRS lien removed, the Debtors would be in a *better* position than if they had filed a Chapter 7 initially. Indeed, this would appear to be true anytime a debtor is allowed to strip a lien and then convert to a Chapter 7, if the underlying secured claim is not one subject to redemption under § 722.[7] As discussed above, that is because, under *Dewsnup,* the Debtors would not be able to have the lien stripped in a Chapter 7 case. Nor would the Debtors be able to redeem the property in the Chapter 7 case under § 722.[8] As also discussed above, the doctrine of lien stripping flows from § 1322(b), and this section allows for the modification of a broader scope of secured claims than can be redeemed under § 722.

However, not allowing debtors to have liens removed upon the payment of the value of the secured claim when those liens are of the type subject to § 722 redemption would cause chapter 13 debtors to convert their case to Chapter 7 if they presently needed or desired to have the lien removed. This is because, after the addition of § 348(f)(1)(B), they would be able to have it redeemed in Chapter 7 with no additional payment under § 722. Such a result would be contrary to Congress's intent not to discourage debtors from Chapter 13 cases. Thus, allowing lien

6. As mentioned earlier, this issue was specifically dealt with to the contrary by the Sixth Circuit in *In re Burba,* 1994 WL 709314, just before the Bankruptcy reform Act of 1994 was passed. That is, the Court in *Burba* decided that valuations in a Chapter 13 case do not survive the conversion to Chapter 7. This probably explains why case was not published. This Court still believes, however, that though this specific portion of the Court's holding was resolved to the contrary by Congress, the more general portion of the holding, that debtors do not retain the benefits of a Chapter 13 plan with which they have not complied, remains uncontradicted by the Reform Act changes.

7. The analysis in *Murry–Hudson,* 147 B.R. 960 (Bankr.N.D.Cal.1992), probably provides the best arguments for allowing liens to be stripped to the value of the collateral upon the payment of the secured portion of the claim. These arguments are based in large part on the fact that "[a]s a practical matter," the secured creditors are in no worse position than they would have been in a Chapter 7 case where the debtor surrendered the collateral and had the remaining debt discharged. *Id.* at 963. Such an argument does not appear universal to all secured claims which could be modified under § 1322(b), and therefore subject to lien stripping. The arguments in *Murry–Hudson,* which risk applying practicality with too broad a brush, appear best tailored to those secured claims which are subject to § 722 redemption.

8. Section 722 allows a debtor to redeem only tangible personal property intended primarily for personal, family or household use, from a lien securing a dischargeable consumer debt. This does not apply to the lien in this case, which deals with a tax lien on the debtor's real property.

stripping in cases where the debtors could otherwise convert to a Chapter 7 case and redeem the property with no additional payment would be consistent with this intent. It also makes good sense. Forcing a debtor who wishes to pay off a portion of his unsecured debts to instead have the dischargeable debts discharged in Chapter 7 in order to have a lien released, so that he can dispose of the property, would run contrary to the purposes of Chapter 13.

Accordingly, this Court holds that liens may be removed under the doctrine of lien stripping prior to the completion of the Chapter 13 plan only when they would be subject to redemption in Chapter 7 cases. For liens other than those which can be the subject to redemption in Chapter 7, the debtor must wait until he has complied with the provisions of his own plan before he may force a creditor to have a lien removed. This is not only logical, but provides additional incentive for debtor to complete their Chapter 13 plans.

Debtors should not be discouraged from filing Chapter 13 cases rather than Chapter 7 cases. However, it is not the intent of Congress, the Supreme Court, the Sixth Circuit, or this Court to encourage debtors to file Chapter 13 cases only to invoke the benefits of that chapter, then convert to Chapter 7 and avoid the duties commensurate with Chapter 13. Thus, the Debtor's Motion will be denied. In reaching this conclusion herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, it is

**ORDERED** that the Debtors' Motion For Order Directing Internal Revenue Service To Release Lien be, and is hereby, *DENIED.*