**In re Tony JEAN, Debtor.**

**No. 01–42831–BKC–RAM.**

United States Bankruptcy Court,
S.D. Florida.

Feb. 20, 2004.

Timothy Kingcade, Kingcade & Garcia, Miami, FL, Counsel for Debtor.

Peter D. Spindel, Coral Gables, FL, Counsel for MERS.

Nancy Herkert, Miramar, FL, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER OVERRULING DEBTOR'S OBJECTION TO MORTGAGE ELECTRONIC'S CLAIM AND SUSTAINING OBJECTION TO CONFIRMATION

ROBERT A. MARK, Chief Judge.

The issues under consideration in this Chapter 13 case are raised by Debtor's Objection to Proof of Claim of Mortgage Electronic Registration Systems, Inc. ("Objection to MERS' Claim") and MERS' Objection to Confirmation. The specific question is whether the second mortgage interest in the Debtor's property, held by MERS, was extinguished in a prior Chapter 13 case filed by the Debtor.

MERS argues that its mortgage was not extinguished because service of the Debtor's plan in the prior case was not properly effected under Fed.R.Bankr.P. 7004(b). Alternatively, MERS argues that Debtor's conversion of his prior bankruptcy case to a case under Chapter 7 reinstated MERS' mortgage interest even if it was properly "stripped off" in the Chapter 13 Confirmation Order.

For the reasons that follow, the Court overrules Debtor's Objection to MERS' Proof of Claim and sustains MERS' Objection to Confirmation finding that notice of the Debtor's intention to strip off the mortgage in his Chapter 13 Plan was not adequately provided in the prior case. As such, the Court holds that the prior Confirmation Order stripping off MERS' mortgage is not entitled to res judicata effect in this case. Instead, MERS is entitled to a valuation hearing to determine whether there is any equity securing its second mortgage. Since the notice problem precludes the Debtor from enforcing the

strip-off Order entered in the prior case, it is not necessary for the Court to determine the second issue: Does a strip-off survive conversion to Chapter 7? Nevertheless, since this Court reaches a conclusion in conflict with that reached by other judges in this district, this Order will address the effect of conversion. As discussed below, the Court concludes that a lien stripped off with proper notice in a Chapter 13 case is *not* reinstated upon conversion to Chapter 7.

### Factual Background

On May 15, 2000, Debtor filed his first chapter 13 bankruptcy case in this court, Case Number 00–14180–BKC–RAM (the "Prior Case"). Debtor's schedules listed his homestead residence (the "Property") with a value of $98,819.00. The Debtor scheduled two mortgages on the Property, a $110,000 first mortgage held by Cendant Mortgage, and a $48,288.12 second mortgage held by Providian Credit Corporation ("Providian").

On June 7, 2000, the National Bankruptcy Noticing Center sent the Notice of Commencement of Chapter 13 Case, Plan and Proof of Claim form by regular automation-compatible first class United States bulk mail to Providian at several addresses listed on Debtor's schedules according to the Certificate of Service filed in the case. The Providian addresses used were addresses provided to account holders of Providian for either payment of the account or for the account holder's billing inquiries.

On June 8, 2000, Debtor filed a Chapter 13 Plan, which listed Providian as a secured creditor, but valued its secured claim at $0.00. Under the local rules and procedures then in effect, a Chapter 13 Plan could seek to value collateral and strip liens under 11 U.S.C. § 506(a) and Rule 3012, Fed.R.Bankr.P., without a separate motion to value if the valuation and strip-off provisions were clearly delineated in the Plan. Administrative Order 99–2, Modification of Chapter 13 Procedures.[1] In a separate section of the Plan titled "Other Provisions Not Included Above" Debtor stated in relevant part as follows:

> *(1) The provisions included on the Notice of Commencement and the Local Rules of the Bankruptcy Court for the Southern District of Florida are incorporated by reference and are binding in any and all parties in interest. This Chapter 13 Plan is also a motion in certain circumstances and any interested party should act accordingly.*

> *(2) The Debtor is stripping off the second mortgage, if any, to Providian Financial in this Chapter 13 Plan.*

On August 30, 2000, Providian assigned its second mortgage on the Property to MERS pursuant to an Assignment of Mortgage recorded in the Public Records of Miami–Dade County.

The deadline for filing proofs of claims in the case was October 30, 2000 and Providian timely filed its claim, which was not objected to by the Debtor even though the confirmation hearing was continued to November 17, 2000, a date after the claims bar date. On December 8, 2000, the Court entered its Order Confirming Third Amended Chapter 13 Plan (the "Order").

The Debtor fell behind on his payments under the Plan, and on March 19, 2001, he filed a Notice of Conversion to Chapter 7. On April 20, 2001, the Order Converting

---

1. The Court changed this procedure in its local rule revisions effective December 31, 2002. A separate motion to value is required and new Local Rule 3012–1 provides that "[m]otions to value collateral pursuant to Bankruptcy Rule 3012 shall be served on the affected creditors in accordance with Bankruptcy Rule 7004."

Case was entered by the Court. After a post-conversion creditors' meeting, a Report of No Distribution was filed by the Chapter 7 Trustee. Debtor was granted a Discharge in Chapter 7 on August 10, 2001, and the case was closed by the Court on August 23, 2001.

On December 7, 2001, Debtor filed this second Chapter 13 case to stop a foreclosure sale of the Property scheduled on that day by the first mortgage holder. If MERS had not been in attendance at that sale, which was cancelled by the bankruptcy filing, it would not have received notice in this case since it was not listed as a creditor on Debtor's schedules. On February 8, 2002, MERS filed its Proof of Claim asserting a secured claim of $48,410.81.

The Debtor's Plan in this case values the collateral securing the MERS mortgage (still referred to as Providian) at zero dollars and specifically provides that "[t]he Debtor is stripping off the second mortgage of Providian Financial." MERS filed an Objection to Confirmation arguing, among other things, that there is equity in the property to secure its claim.

On June 13, 2002, Debtor filed his Objection to MERS' Proof of Claim objecting to the classification of the claim as secured. Debtor argues that confirmation of his Third Amended Plan in the Prior Case on December 8, 2000, was a final order "stripping off" the second mortgage of MERS, in accordance with 11 U.S.C. § 506. As such, Debtor alleged that MERS' claim is not a secured claim and the claim should be stricken and disallowed.

Thereafter, the Court entered a scheduling Order directing the parties to brief the notice issue and effect of conversion. Memoranda were submitted, oral argument was presented at a hearing conducted on August 20, 2002, and the matters were taken under advisement.

### Discussion

**A. The Debtor Failed to Properly Serve the Plan in the Prior Case Which Provided for Strip–Off of the Second Mortgage**

The facts regarding service of the pertinent papers are not in dispute. Neither the Chapter 13 plan nor the Notice of Commencement were served on an officer, managing or general agent, or any other agent authorized by appointment or by law to receive service of process as required by Fed.R.Bankr.P. 7004(b). Notwithstanding the failure to effect service under Rule 7004(b), the Debtor argues that the due process purposes of the rule were satisfied since MERS (or more specifically, Providian, the predecessor holder of the mortgage) had actual notice of the bankruptcy case as evidenced by the filing of its Proof of Claim.

Thus, the sufficiency of service comes down to one simple question: Did actual notice of the commencement of the Prior Case, as evidenced solely by the filing of Providian's Proof of Claim, substitute for service under Rule 7004(b) of a contested matter seeking to value the creditor's secured claim? As discussed below, the answer is no.

In *In re Nowling*, 279 B.R. 607 (Bankr. S.D.Fla.2002), Bankruptcy Judge Ray, of this district, was faced with virtually identical facts raising the issue of proper service of a Chapter 13 Plan which seeks to strip off a junior mortgage lien. Judge Ray found that strict compliance with service requirements is necessary when Chapter 13 debtors seek to "strip off" a consensual lien. Judge Ray explained that the requirements for service of the notice of commencement of a case and deadline for filing a proof of claim are markedly

different from service and notice procedures for contested matters, such as a motion to value security, and did not satisfy the minimum requirements of due process when a debtor seeks to value collateral in a plan. Judge Ray concluded that the Chapter 13 debtors in his case failed to effect proper service of their Chapter 13 Plan and of their motion to value real property on the mortgagee. In *Nowling*, service was not effected on an agent authorized to receive service of process. Rather, notice was sent only to a post office box used for loan payments. Therefore, Judge Ray quashed service and denied both confirmation of the plan and the lien strip motion.

■ This Court adopts the reasoning of *In re Nowling*, and applies its holding to the similar facts here. This court also finds that the filing of a proof of claim by an agent who is not qualified to accept service under Rule 7004 of a contested matter does not indicate sufficient participation in the case to prove that the creditor had actual and sufficient notice of the strip-off, particularly where the Debtor relied on the Confirmation Order to strip off the mortgage and did not file a separate objection to the claim. Finally, this Court adopts Judge Ray's clear statement that the expedited procedure, which the Bankruptcy Court for the Southern District of Florida enacted in an Administrative Order and in the revised Chapter 13 Plan Form LF–31 in April 1999, did not in any way eliminate the requirement of proper service of a contested matter seeking to strip off a creditor's mortgage.

The Court's ruling here that the mere filing of a proof of claim did not demonstrate adequate notice does not mean that a creditor will always be entitled to relief from a confirmation order or order valuing collateral entered absent proper service under Rule 7004. Other cases may present facts showing sufficient participation by a creditor's attorney or representative to evidence actual notice of the strip-off thereby satisfying due process requirements.

### B. *A Lien Stripped Off with Proper Notice in a Chapter 13 Case is not Reinstated Upon Conversion to Chapter 7*

■ Based upon the Court's determination of the defect in notice, it is not necessary to reach the second issue. Nevertheless, for future guidance, the Court will provide its analysis and conclusion that conversion does not void an earlier order stripping off a mortgage, or indeed any order in a Chapter 13 case valuing collateral for purposes of determining the amount of an allowed secured claim.

Before addressing the effect of conversion on a strip-off order, a brief discussion of strip off is appropriate. In *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court ruled that debtors could not use § 506(a) to *strip down* the value of a secured claim arising from a home mortgage, because § 1322(b)(2) prohibits debtors from modifying the rights of holders of secured claims secured only by a lien on a debtor's home. This left open the question of whether a fully unsecured home mortgage could be *stripped off* without violating the § 1322 restriction on modification. The circuits are split, but the Eleventh Circuit has specifically held that § 1322 protects only mortgages that are secured by some existing equity in the home. Totally unsecured home mortgages may be "stripped off" under § 506(a). *In re Tanner*, 217 F.3d 1357 (11th Cir.2000). With this issue settled, the question is, does a strip-off order obtained in a Chapter 13 case remain in effect if the case is converted to a Chapter 7.

Resolving this issue poses a difficult challenge pitting the Debtor's strong statutory argument against the creditor's policy arguments which are supported by case law, including decisions by two bankruptcy judges in this district.

### 1. *The Statutory Analysis*

The Debtor asserts that the statutory language of 11 U.S.C. § 348(f) clearly supports his position.

11 U.S.C. § 348 Effect of Conversion

. . .

*(f)(1) . . . [w]hen a case under chapter 13 of this title is converted to a case under another chapter under this title—*

. . .

*(B) valuations of property and of allowed secured claims in the chapter 13 case shall apply in the converted case, with allowed secured claims reduced to the extent that they have been paid in accordance with the chapter 13 plan.*

*(2) If the debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property in the converted case shall consist of the property of the estate as of the date of conversion.*

The concept of lien stripping in chapter 13 is that a debtor may pay the value of the collateral securing an undersecured creditor's claim, and then have the lien removed. The Debtor urges this Court to hold that the value of the secured portion of MERS' lien, being zero, has been paid. Any appreciation of the property during or after the Chapter 13 inures to the benefit of the debtor, not the Chapter 7 trustee or secured creditor. *In re Page*, 250 B.R. 465 (Bankr.D.N.H.2000) (equity in real estate); *In re Wegner*, 243 B.R. 731 (Bankr.D.Neb. 2000) (equity in real estate); *In re Sargente*, 202 B.R. 1023 (Bankr.S.D.Fla.1996) (equity in car). Thus, argues the Debtor,

whether or not the property has appreciated in value during the Chapter 13 case, the value determined in the 13 case is binding and the strip-off order remains in effect.

Some courts have agreed that the statutory language is clear, including *In re Page*, cited earlier. In *Page*, following conversion of the debtor's Chapter 13 case to one under Chapter 7, the trustee moved to employ a realtor to sell the debtor's homestead. The trustee claimed that the property, valued by the debtor in her schedules at $65,000, was worth $110,000. The court noted that, pursuant to § 348(f), absent a showing of bad faith, property of the estate in a converted case consists of those assets which constituted property of the estate on the petition date, and valuations of property and of allowed secured claims prior to conversion are binding in the converted case. The court held that the trustee was not authorized, following conversion of the debtor's Chapter 13 case to one under Chapter 7, to sell property in which the debtor had no equity on the petition date merely because the property may have appreciated in value postpetition. The court reasoned that under § 348(f), absent any showing of bad faith by the debtor, the trustee was bound by the bankruptcy court's valuation of real property which secured a creditor's claim, a valuation implicit in the confirmation order.

### 2. *The Policy Argument*

MERS argues that a debtor should not obtain the benefits of a Chapter 13 strip-off upon conversion to Chapter 7, since a debtor cannot strip off a home mortgage if the case is filed under Chapter 7. The main case which other courts have adopted and cited to in support of this argument is *In re Pearson*, 214 B.R. 156 (Bankr. N.D.Ohio 1997). In *Pearson*, after conversion to Chapter 7, the court held that the IRS was not required to release its lien on

the debtor's property notwithstanding confirmation of a plan treating the IRS claim as totally unsecured and notwithstanding a stipulation during the Chapter 13 case that the IRS' proof of claim was an allowed unsecured nonpriority claim. The court held that the debtors could not claim the particular benefits of lien-stripping in a Chapter 13 case when they did not comply with the provisions of their own plan. The court stated that allowing the debtors in the case to file under Chapter 13, remain in Chapter 13 for just nine months, then convert the case to Chapter 7 and demand to retain the benefits of Chapter 13 in the converted case, worked an injustice to the provisions of the Bankruptcy Code as well as the Supreme Court's holding in *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992) (Chapter 7 lien stripping disallowed).

The *Pearson* court noted that the general purpose of § 348(f) was to equalize the treatment a debtor would receive under a Chapter 13 case later converted to a Chapter 7 case with the treatment the debtor would receive if he filed a Chapter 7 originally. The court elaborated that if it allowed the debtors to have the IRS lien removed, the debtors would be in a better position than if they had filed a Chapter 7 initially, since the underlying secured claim is not one subject to redemption under § 722[2] and strip-off is not available in Chapter 7. Thus, the court held that liens stripped in a Chapter 13 remain stripped upon conversion to Chapter 7, prior to the completion of the Chapter 13 plan, only when it is a lien on property subject to redemption in Chapter 7 cases. For liens on property which is not subject to redemption in Chapter 7, the court stated that a stripped off lien is not extinguished or removed until a debtor has completed payments under the Chapter 13 plan.

The court in *Pearson* stated that it did not believe that § 348(f)(1)(B) was intended to address the issue of lien-stripping. The *Pearson* court noted that there is no legislative history of § 348(f)(1)(B) which explicitly addresses Congress's intent regarding lien-stripping. Accordingly, the court found that, pursuant to *Dewsnup*, absent clear legislative intent or clear unambiguous language, Congress could not have intended to overturn the well accepted principle that liens pass through bankruptcy unaffected. *See Dewsnup*, 502 U.S. at 416–418, 112 S.Ct. 773. The court determined that the specific purpose of § 348(f), therefore, must be something that concerns secured claim valuations but not lien-stripping. It concluded that such a purpose is the valuation of secured claims for the purposes of redemption under § 722 in a Chapter 7 case, as this was an area of the law that was unresolved before the Reform Act changes. The *Pearson* court believed § 348(f)(1)(B) simply resolves this conflict.

Two judges in this district have ruled that strip-off orders do *not* survive conversion, Judge Cristol in *In re Marante*, 2003 WL 21361675 (Bankr.S.D.Fla.2003), and Judge Ray in an unpublished order entered in *In re Tucker*, Case No. 00–25155–BKC–RBR. Judge Ray did not cite or discuss *Pearson*, but his Order in *Tucker* included the specific conclusion that lien-stripping does not survive conversion of a case from Chapter 13 to Chapter 7. In *Marante*, Judge Cristol cited extensively to *Pearson* and adopted its reasoning and holding.

**2.** Section 722 allows a debtor to redeem certain personal property subject of a lien by paying the holder of the lien the amount of the allowed secured claim. Section 722 only applies to personal property intended primarily for personal, family or household use.

### 3. *Statute Trumps Policy*

*Pearson* and the decisions that follow it (including Judge Cristol's *Marante* decision) interpret § 348(f)(1)(B) as applying only to strip-downs of liens on personal property that would be subject to redemption under § 722. Although cases which dealt with personal property may have been the focus of the legislature change, there is nothing in the legislative history to support *Pearson's* view that § 348(f) only applies to valuations of property subject to redemption. H.R. Rep. 103–834, 103rd Cong., 2nd Sess. 42–43 (Oct. 4, 1994), U.S.Code Cong. & Admin.News 1994, 3323, 3350–3351; 140 Congr. Rec. H10770 (Oct. 4, 1994). More importantly, there is nothing in the statute which somehow limits the clear language to valuations of property subject to redemption. The statute simply says "valuations of property and of allowed secured claims in the Chapter 13 case *shall* apply in the converted case." (emphasis added).

This Court has considered the policy arguments against enforcement of a strip off upon conversion including, in particular, the argument that enforcing the strip-off allows debtors to achieve a result upon conversion that could not be achieved if the case was filed initially under Chapter 7. Unfortunately, it is not the Court's role to implement policy, sound or otherwise, if doing so requires the Court to ignore clear statutory language. That task belongs to Congress.[3]

■ The statutory language of § 348(f)(1)(B) is unambiguous. Courts should not struggle to infer secret meanings or Congressional intent from the omission or absence of certain language in the statute even in pursuit of what appears to be sound policy. *See Lamie v. U.S. Trustee,* —— U.S. ——, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004). Moreover, if the Court were to determine whether Congress intended to omit statutory language that would address the effect of liens after conversion, the Court would find support for the proposition that Congress specifically intended to omit language reinstating liens upon conversion. Section 349 of the Bankruptcy Code describes the effect of dismissal of a bankruptcy case. Section 349(b)(1)(C) expressly provides that dismissal reinstates "any lien voided under § 506(d)." Section 348 could have, but does not, include a comparable provision. Instead, § 348 provides that valuations of secured claims in Chapter 13 apply upon conversion. A time-honored maxim of statutory construction is *Expressio unius est exclusio alterius* meaning that the expression of one thing is the exclusion of another. Under this maxim, it can be argued that Congress' inclusion of language in § 349 specifically reinstating voided liens upon dismissal indicates congressional intention to preserve § 506 strip-downs or strip-offs upon conversion, particularly since no reinstatement of lien language is included in § 348.

*Collier on Bankruptcy* also agrees with this Court's plain reading of the statute. In addressing § 348(f)(1)(B), *Collier's* states:

> The subsection clearly applies to the valuations used in determining allowed secured claims. Once the value of an item of property is established for that purpose, whether by court order, agreement or otherwise, it will not be changed after the case is converted to Chapter 7.

---

**3.** This Court agrees with Judge Zurzolo's comment in *Crain:* "Congress needs to develop a clear and comprehensive lien avoidance scheme that not only clarifies when lien voiding is allowed, but also closes any loopholes amongst the different chapters of bankruptcy." 243 B.R. at 84–85.

*Collier on Bankruptcy*, ¶ 348.07[3], p. 348–24, 15th ed.2002. (emphasis added).

Finally, the Court rejects the risk of abuse argument discussed in *Pearson*. The court expressed its concern about debtors who could abuse the statutory framework and accomplish through a procedural sleight-of-hand what they could not if they had filed a Chapter 7 initially. The court found that debtors could not claim the particular benefits of lien-stripping in a Chapter 13 case when they did not themselves comply with the provisions of their own plan. Specifically, in *Pearson*, the court stated that allowing the debtors in the case to file under Chapter 13, remain in Chapter 13 for just nine months, then convert the case to Chapter 7 and demand to retain the benefits of Chapter 13 in the converted case, worked an injustice to the provisions of the Bankruptcy Code as well as the Supreme Court's holding in *Dewsnup*. 214 B.R. at 164. *See also In re Crain*, 243 B.R. 75, 84 (Bankr. C.D.Cal.1999).

This Court understands the concern voiced by *Pearson*, as well as other courts. However, the *Pearson* court has overlooked or downplayed the fact that Congress itself was also concerned about potential abuse as evidenced by § 348(f)(2). As provided in that section, "if the debtor converts a case … in *bad faith*, the property in the converted case shall consist of the property of the estate as of the date of conversion." (Emphasis added).[4]

The statute does not specify what would constitute "bad faith" to trig-

ger this exception. One situation in which bad faith might be found would be if the debtor never really intended to proceed with a Chapter 13 case and had filed it simply to lien strip a mortgage or to protect assets the debtor knew would soon be acquired. Courts are also likely to find bad faith under an "all of the circumstances" test when the debtor has been repeatedly dishonest and has manipulated the system unfairly. *See In re Siegfried*, 219 B.R. 581 (Bankr.D.Colo.1998). Courts clearly should not find bad faith if the debtor is unable to complete a plan due to a change in circumstances or financial hardship. Moreover, simply taking advantage of the statute's provisions excluding property acquired during the Chapter 13 case from the Chapter 7 estate after conversion is not bad faith. *See In re Wiczek–Spaulding*, 223 B.R. 538 (Bankr. D.Minn.1998).

In the case at bar, MERS never alleged that the Debtor converted the Prior Case in bad faith. (Of course, as discussed earlier, MERS' mortgage interest was not extinguished because service of the Debtor's plan in the Prior Case was not properly effected under Fed.R.Bankr.P. 7004(b)). For future guidance, however, this Court holds that 11 U.S.C. § 348(f) is unambiguous and clearly provides that unless the debtor converts in bad faith, the affected creditor and the Chapter 7 trustee are bound by the bankruptcy court's valuation of property in a Chapter 13 plan and any strip-down or strip-off order resulting

4. One respected commentator suggests that the provisions in § 348(f)(2) bringing after acquired property into the Chapter 7 estate if the case is converted in bad faith would not affect liens stripped off during the Chapter 13. Lundin, *Chapter 13 Bankruptcy*, 3d. ed., p. 320–6. However, it would seem that if the increase in value during the Chapter 13 comes into the Chapter 7 estate upon bad

faith conversion, that increased valuation would implicitly entitle lienholders to a de novo valuation hearing. Moreover, the Debtor in this case concedes that if a case is converted in bad faith "a debtor does not get the benefit of the valuations achieved in the Chapter 13 case." Debtor's Memorandum of Law in Support of Objection to Claim of [MERS], p. 7 (CP # 25).

from that valuation remains binding in the Chapter 7 case. Therefore, it is—

ORDERED as follows:

1. Since notice of the strip-off was not adequately provided in the Prior Case, the prior Confirmation Order stripping off MERS' mortgage is not entitled to res judicata effect in this case. Therefore, Debtor's Objection to MERS' Proof of Claim is overruled, and MERS' Objection to Confirmation is sustained.

2. If the Debtor seeks a valuation hearing based upon his belief that as of the filing of this case, the MERS mortgage is wholly unsecured, the Debtor shall file a Motion to Value under Fed.R.Bankr.P. 3012.